IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EDWARD TANSEY, Derivatively on Behalf of DUKE ENERGY CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| JAMES E. ROGERS, *et al.*, | ) ) | C.A. No. 12-1049-RGA |
| Defendants, | ) ) | |
| and | ) ) | |
| DUKE ENERGY CORPORATION, a Delaware corporation, | ) ) ) | |
| Nominal Defendant. | ) | |
| WARREN PINCHUCK, derivatively on Behalf of DUKE ENERGY CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| JAMES E. ROGERS, *et al.*, | ) ) | C.A. No. 12-1367-RGA |
| Defendants, | ) ) | |
| and | ) ) | |
| DUKE ENERGY CORPORATION, a Delaware corporation, | ) ) ) | |
| Nominal Defendant. | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF
THEIR MOTION TO STAY PROCEEDINGS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
A. Gilchrist Sparks, III (#467)
Kenneth J. Nachbar (#2067)
Susan W. Waesco (#4476)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Defendants James E. Rogers,*
*Michael G. Browning, G. Alex Bernhardt, Sr.,*
*Ann Maynard Gray, James T. Rhodes, James H.*
*Hance, Jr., William Barnet, III, Philip R. Sharp,*
*Daniel R. DiMicco, John H. Forsgren, E. James*
*Reinsch, Lynn J. Good, Steven K. Young, and*
*Nominal Defendant Duke Energy Corporation.*

OF COUNSEL:

Steven M. Bierman
Erica S. Malin
Jackie A. Lu
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300

November 19, 2012

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ iii

NATURE AND STAGE OF THE PROCEEDINGS .................................................1

SUMMARY OF ARGUMENT ....................................................................................2

STATEMENT OF FACTS .........................................................................................3

      A.      The Federal Securities Class Actions. ...........................................5

      B.      The State Derivative Actions. ........................................................5

      C.      The North Carolina Derivative Action. ..........................................6

      D.      The *Tansey* and *Pinchuck* Actions. ...............................................6

ARGUMENT ..............................................................................................................8

    I.      THE COURT SHOULD STAY THESE RELATED ACTIONS
          PENDING RESOLUTION OF THE SECURITIES CLASS
          ACTIONS. ..........................................................................................8

      A.      These Cases Should Be Stayed To Prevent Prejudice To
              Duke and the Individual Defendants..............................................8

      B.      A Stay Is Necessary to Promote the Orderly Course of
              Justice, Avoid Duplicative Litigation and Prevent a Waste
              of Resources....................................................................................10

      C.      No Prejudice Would Result From a Stay of These Actions.......11

      D.      The Relief Requested Relates to The Outcome of the
              Pending Securities Class Actions...................................................12

    II.     THE COURT SHOULD ABSTAIN IN FAVOR OF THE STATE
          DERIVATIVE ACTIONS. ...............................................................12

      A.      These Actions Are Parallel to the State Derivative Actions. ......13

          1.      The Parties Are Substantially the Same.........................13

          2.      The Factual and Legal Issues Are Substantially the
                 Same...................................................................................14

          3.      The Court May Decline to Exercise Supplemental
                 Jurisdiction Over the State-Law Claims. .......................17

B.     The *Colorado River* Factors Favor a Stay of these Actions. ......................18

1.     Abstention Will Avoid the Unfairness and Inefficiency That Would Result From Piecemeal Litigation..................................................................................18

2.     Abstention Will Allow the Court of Chancery to Rule on Substantive Issues of Controlling Delaware Law. ........................................................................................19

3.     The Court of Chancery Will Adequately Protect the Interests of All Parties...................................................19

4.     The Court of Chancery Consolidated Action Is Further Advanced Than These Actions. ........................................20

CONCLUSION...............................................................................................................20

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aetna Cas. & Sur. Co. v. Sterner,*
   700 F. Supp. 252 (E.D. Pa. 1988) ........................................................................19

*Bank of Okla., N.A. v. Tharaldson Motels II, Inc.,*
   671 F. Supp. 2d 1058 (D.N.D. 2009) ..................................................................13

*Breault v. Folino,*
   2002 WL 31974381 (C.D. Cal. Mar. 15, 2002) ..................................................10

*Brenner v. Albrecht,*
   2012 WL 252286 (Del. Ch. Jan. 27, 2012) ................................................10, 11, 12

*Brudno v. Wise,*
   2003 WL 1874750 (Del. Ch. Apr. 1, 2003) ...................................................11, 12

*Calleros v. FSI Int'l, Inc.,*
   2012 WL 4097832 (D. Minn. Sept. 18, 2012) ..............................................16, 17

*Clark v. Lacy,*
   376 F.3d 682 (7th Cir. 2004) ..............................................................................13

*Colorado River Water Conservation District v. United States,*
   424 U.S. 800 (1976) ...................................................................................Passim

*Cucci v. Edwards,*
   2007 WL 3396234 (N.D. Cal. Oct. 31, 2007) .......................................................9

*Gen. Elec. Co. by Levit v. Cathcart,*
   980 F.2d 927 (3d Cir. 1992) ................................................................................20

*Hyland v. Harrison,*
   2006 WL 288247 (D. Del. Feb. 7, 2006) ...............................................................8

*In re Cray Inc. Derivative Litig.,*
   431 F. Supp. 2d 1114 (W.D. Wash. 2006) ..........................................................10

*In re Groupon Deriv. Litig.,*
   2012 WL 3133684 (N.D. Ill. July 31, 2012) ...............................................9, 10, 12

*In re Isolagen Inc., Sec. & Derivative Litig.,*
   2007 WL 1101278 (E.D. Pa. Apr. 10, 2007) ................................................10, 12

*In re Isolagen Inc. Secs. & Deriv. Litg.,*
   279 Fed. Appx. 133 (3d Cir. May 22, 2008) .......................................................12

- iii -

*In re Massey Energy Co.*,
   2011 WL 2176479 (Del. Ch. May 31, 2011) .......................................................9, 12

*In re Novell, Inc. Shareholder Litig.*,
   2012 WL 458500 (D. Mass. Feb. 10, 2012) ...........................................13, 16, 17, 19

*International Jensen Inc. v. Emerson Radio Corp.*,
   1996 WL 494273 (N.D. Ill. Aug. 27, 1996) ..............................................................16

*Kamen v. Kemper Fin. Servs., Inc.*,
   500 U.S. 90 (1991) ...................................................................................................19

*Landis v. N. American Co.*,
   299 U.S. 248 (1936) ...............................................................................................8, 17

*Lemon Bay Partners LLP v. Hammonds*,
   2007 WL 1830899 (D. Del. June 26, 2007) ...............................................................17

*Litig. Trust of MDIP, Inc. v. Rapoport*,
   2005 WL 1242157 (D. Del. May 25, 2005) ...............................................................17

*Louisiana Municipal Police Employees' Retirement Sys. v. Pyott*,
   46 A.3d 313 (Del. Ch. 2012) ...............................................................................10, 20

*Lumen Constr., Inc. v. Brant Constr. Co.*,
   780 F.2d 691 (7th Cir. 1985) ....................................................................................14

*McCreary v. Celera Corp.*,
   2011 WL 1399263 (N.D. Cal. Apr. 13, 2011) ...........................................................17

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) .....................................................................................................18

*Reserves Dev. LLC v. Severn Sav. Bank, SFB*,
   961 A.2d 521 (Del. 2008) ..........................................................................................20

*Romaine v. Compuserve Corp.*,
   160 F.3d 337 (6th Cir. 1998) ....................................................................................13

*Rosenblum v. Sharer*,
   2008 U.S. Dist. LEXIS 65353 (C.D. Cal. Jul. 28, 2008) ............................................9

*Shields v. Murdoch*,
   2012 WL 4097199 (S.D.N.Y. Sept. 18, 2012) ...........................................................16

*Strougo v. BEA Associates*,
   2000 WL 45714 (S.D.N.Y. Jan. 19, 2010) .................................................................19

*Trent v. Dial Med. of Fla., Inc.*,
   33 F.3d 217 (3d Cir. 1994), *overruled in part on other grounds*.............................13

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976)...................................................................................................15

*United Mine Workers of Am. v. Gibbs*,
    383 U.S. 715 (1966)...................................................................................................17

**RULES AND STATUTES**

28 U.S.C. § 1367(c)(2)...................................................................................................17

Court of Chancery Rule 23.1 ....................................................................................15, 20

Fed. R. Civ. P. 23.1 .......................................................................................................15

Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 77z-1(a)(3)(B) and 78u-
    4(a)(3)(B) ..................................................................................................................5

Defendants James E. Rogers, Michael G. Browning, G. Alex Bernhardt, Sr., Ann Maynard Gray, James T. Rhodes, James H. Hance, Jr., William Barnett, III, Philip R. Sharp, Daniel R. DiMicco, John H. Forsgren, E. James Reinsch, Lynn J. Good, and Steven K. Young ("Individual Defendants,") and Nominal Defendant Duke Energy Corporation ("Duke" or the "Company," and collectively, "Defendants"), respectfully submit this opening brief in support of their motion to stay these shareholder derivative actions in favor of earlier-filed consolidated federal securities class actions pending in the Western District of North Carolina and consolidated derivative actions pending in the Delaware Court of Chancery.

## NATURE AND STAGE OF THE PROCEEDINGS

Defendants respectfully request a stay of the two shareholder derivative actions pending before this Court.  On August 17, 2012, Plaintiff Edward Tansey ("Tansey") filed a shareholder derivative action here after *six* other sets of plaintiffs had filed substantially similar actions in three other jurisdictions: (a) three securities class actions in the federal courts in North Carolina, since consolidated in the Western District of North Carolina (the "Securities Class Actions");[1] (b) two derivative actions in the Delaware Court of Chancery (the "State Derivative Actions");[2] and (c) another derivative action filed in the North Carolina State Court.[3]  On October 26, 2012,

---

[1]  These three complaints, captioned *Nieman v. Duke Energy Corporation, et al.*, Case No. 3:12-cv-456; *Sunner v. Duke Energy Corporation, et al.*, Case No. 3:12-cv-474; and *Craig v. Duke Energy Corporation, et al.*, Case No. 3:12-cv-624, have been consolidated for the resolution of all pretrial issues (excepting the appointment of lead class counsel) before the Honorable David S. Cayer, U.S. Magistrate Judge, pursuant to the Order of the Honorable Max O. Cogburn, U.S. District Judge, dated October 16, 2012.  (Copies of these complaints are attached to the Transmittal Affidavit of Susan W. Waesco dated November 19, 2012 ("Waesco Aff."), Exs. 1-3.)

[2]  These two complaints are captioned *Rupp v. Rogers, et al.*, C.A. No. 7705-CS, dated July 16, 2012, and as amended July 30, 2012, and *Raul v. Rogers, et al.*, C.A. No. 7775-CS, dated August 10, 2012.  (Waesco Aff., Exs. 4-5.)  These actions have been consolidated under the caption *In re Duke Energy Corporation Derivative Litigation*, C.A. No. 7705-CS, pursuant to the Consolidation Order entered by Chancellor Leo E. Strine, Jr. on September 24, 2012.

[3]  This complaint, captioned *Krieger v. Johnson, et al.*, Case No. 12-13727, was filed in the Superior Court of the State of North Carolina, Mecklenburg County, dated July 20, 2012, then

(Continued . . .)

yet another duplicative derivative action was filed in this Court by Plaintiff Warren Pinchuck ("Pinchuck" and, together with Tansey, "Plaintiffs").[4]  For the reasons set forth below, these actions should be stayed, at their inception, in favor of the Securities Class Actions and State Derivative Actions.

## SUMMARY OF ARGUMENT

In January 2011, Duke and Progress Energy, Inc. ("Progress"), two utility companies operating in the Southeastern and Midwestern United States, announced that they had entered into a merger agreement, with Duke to be the surviving entity.  The parties announced that following the merger, William Johnson, the President and CEO of Progress, would become the CEO of the merged Company, and James Rogers, the CEO of Duke, would become the executive chairman of Duke's post-merger Board of Directors.  Due to the necessity of regulatory approval, the merger did not close until July 2, 2012.  Immediately following the close of the merger, the Board of Directors of the combined Company met and, as a result of concerns regarding Johnson's ability to fulfill the CEO role, asked Johnson to resign.  He agreed to do so, and Rogers was reinstated as Duke's CEO.

Several shareholder derivative and securities class action lawsuits were immediately filed, most alleging in one form or another that the legacy Duke directors (a majority of the combined Company's Board) had decided, before July 2, 2012, to replace Johnson, but improperly failed to disclose that intent.  Others allege that Johnson's severance package was wasteful.  Collectively, these complaints all derive from the same facts and circumstances, and

---

(. . . continued)
   amended on July 30, 2012, and designated for the North Carolina State Business Court. (Waesco Aff., Ex. 6.)

[4]   This complaint is captioned *Pinchuck v. Rogers, et al.*, Case No. 1:12-cv-01367-RGA (D. Del.). Copies of the *Tansey* and *Pinchuck* complaints are also submitted herewith. (Waesco Aff., Exs. 7-8.)

universally assert that the directors' actions were wrongful and harmed the Company and its stockholders.

Defendants should not be forced to litigate essentially the same putative derivative claims, each purportedly brought for the benefit and on behalf of the Company, simultaneously before three different judges in three separate courts. Nor should Defendants be forced to simultaneously litigate purported derivative claims that are premised on the same alleged failure to disclose information that is the basis for the Securities Class Actions. Permitting these duplicative suits to proceed simultaneously would waste judicial resources and subject Defendants to significant and unnecessary burden, wasteful and needless expense, and a substantial risk of inconsistent results. Moreover, if these derivative suits are not stayed, Duke would be placed in the untenable position of ostensibly suing the Individual Defendants, through its purported surrogate (a shareholder), while Duke and the very same directors are simultaneously jointly defending claims arising from the very same facts in the Securities Class Actions. Under well-settled precedent addressing multiple lawsuits such as these, these derivative actions should not be permitted to proceed until the primary basis for Plaintiffs' claims, the Securities Class Actions, is resolved.

<u>STATEMENT OF FACTS</u>

Shortly after the announcement of Johnson's resignation, the race to the courthouse began. As set forth below, all eight actions repeat the same basic factual allegations and assert a host of similar legal claims.

In January 2011, Duke and Progress announced that they had entered into an agreement to merge, with Duke to be the surviving entity.[5] The parties publicly conveyed their intention

---

[5]  *Tansey* Compl. ¶ 4, *Pinchuck* Compl. ¶ 3; *see also Craig* Compl. ¶ 4; *Nieman* Compl. ¶ 1; *Sunner* Compl. ¶ 5; *Rupp* Compl. ¶ 2; *Raul* Compl. ¶ 3; *Krieger* Compl. ¶ 33.

that, following the merger, William Johnson, the pre-merger CEO of Progress, would become the CEO of Duke, and James Rogers, the pre-merger CEO of Duke, would become the executive chairman of Duke.[6]  Given the necessity of obtaining regulatory approval, the merger did not close until July 2, 2012.[7]

Immediately following the close of the merger, the Board of the combined Company met and addressed concerns raised by pre-merger Duke directors regarding Johnson's ability to fulfill the CEO role.[8]  Ten legacy Duke directors voted to ask Johnson to resign as Duke's CEO, and five former Progress directors dissented.[9]  Johnson was asked to resign, he agreed to do so, and Rogers was reinstated as Duke's CEO.[10]

On July 6, 2012, the North Carolina Utilities Commission ("NCUC" or the "Commission") announced an investigation into the Company's pre-merger disclosures to the Commission.[11]  The Commission held hearings to receive the testimony of Rogers, Johnson and members of the Board.[12]

---

[6]   *Tansey* Compl. ¶ 6; *Pinchuck* Compl. ¶ 4; *see also Craig* Compl. ¶ 5; *Nieman* Compl. ¶¶ 2-3; *Sunner* Compl. ¶ 7; *Rupp* Compl. ¶ 3; *Raul* Compl. ¶ 4; *Krieger* Compl. ¶ 35.

[7]   *Tansey* Compl. ¶¶ 65-67, 69; *Pinchuck* Compl. ¶¶ 34-35; *see also Craig* Compl. ¶ 12; *Nieman* Compl. ¶ 8; *Sunner* Compl. ¶ 10; *Rupp* Compl. ¶ 5; *Raul* Compl. ¶ 33; *Krieger* Compl. ¶¶ 34, 38.

[8]   *Tansey* Compl. ¶ 8; *Pinchuck* Compl. ¶¶ 36, 38; *see also Craig* Compl. ¶ 12; *Nieman* Compl. ¶ 8; *Sunner* Compl. ¶ 11; *Rupp* Compl. ¶¶ 97, 99; *Raul* Compl. ¶ 80; *Krieger* Compl. ¶ 42.

[9]   *Tansey* Compl. ¶ 8; *Pinchuck* Comp. ¶ 36; *see also Craig* Compl. ¶ 12; *Nieman* Compl. ¶ 8; *Sunner* Compl. ¶ 11; *Rupp* Compl. ¶ 101; *Raul* Compl. ¶ 59; *Krieger* Compl. ¶ 42.

[10]  *Tansey* Compl. ¶ 8; *Pinchuck* Compl. ¶ 5; *see also Craig* Compl. ¶ 12; *Nieman* Compl. ¶ 9; *Sunner* Compl. ¶ 11; *Rupp* Compl. ¶ 8; *Raul* Compl. ¶ 9; *Krieger* Compl. ¶¶ 39, 42.

[11]  *Tansey* Compl. ¶ 10; *Pinchuck* Compl. ¶¶ 7, 40; *see also Craig* Compl. ¶ 13; *Nieman* Compl. ¶ 55; *Sunner* Compl. ¶ 12; *Rupp* Compl. ¶ 11; *Raul* Compl. ¶ 11; *Krieger* Compl. ¶¶ 50-51.

[12]  *Tansey* Compl. ¶¶ 78, 83; *Pinchuck* Compl. ¶¶ 41-42; *see also Craig* Compl. ¶ 17, 59; *Nieman* Compl. ¶ 56; *Sunner* Compl. ¶ 96, 106, 109-111, 118; *Rupp* Compl. ¶ 114; *Raul* Compl. ¶ 11; *Krieger* Compl. ¶ 52.

A.      The Federal Securities Class Actions.

Three sets of shareholders have filed federal putative class actions alleging that Duke and the Individual Defendants violated the securities laws.  The Securities Class Actions allege that the Form S-4/A Registration Statement and Prospectus filed in connection with the merger (the "Proxy Materials") were materially false and misleading.[13]   All three actions have been consolidated in the Western District of North Carolina, and motions for the appointment of lead plaintiff and counsel pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 77z-1(a)(3)(B) and 78u-4(a)(3)(B), are pending before Judge Cogburn.

B.      The State Derivative Actions.

On July 20, 2012, an individual Duke shareholder, Lesley C. Rupp, commenced a derivative action on behalf of the Company in the Delaware Court of Chancery against the legacy Duke directors.  On July 30, 2012, Rupp amended her complaint to add an additional plaintiff, Richard Bernstein. As here, the *Rupp* Complaint alleges breaches of fiduciary duties by the Individual Defendants for (i) intentionally misleading the NCUC "through false statements or material intentional omissions" (*Rupp* Compl. ¶ 25; *see also Tansey* Compl. ¶¶ 10, 53-54; *Pinchuck* Compl. ¶¶ 35, 40), and (ii) acting in bad faith by "[f]ail[ing] to advise the SEC and the investing public of facts material in light of other disclosure regarding the merger." (*Rupp* Compl. ¶ 130; *see also Tansey* Compl. ¶ 68; *Pinchuck* Compl. ¶¶ 4, 35).  On August 13, 2012, David Raul, custodian for Malka Raul UTMA NY, and William Burdine, filed a derivative action in the Court of Chancery, based on similar allegations and complaining about Johnson's severance package.  Both actions were assigned to Chancellor Strine  On September 24, 2012, the Chancellor entered an order consolidating the *Rupp* and *Raul* actions, and motions for the

---

[13]  *See, e.g., Craig* Compl. ¶ 48; *Nieman* Compl. ¶¶ 40-41; *Sunner* Compl. ¶¶ 6-7, 74.

appointment of lead plaintiff and class counsel have been briefed and are scheduled to be heard on December 21, 2012.

### C.      The North Carolina Derivative Action.

On July 31, 2012, Joel Krieger, another individual Duke shareholder, filed an amended complaint in the North Carolina Business Court, asserting derivative claims against certain Individual Defendants for breaches of fiduciary duty and waste, and an unjust enrichment claim against Johnson. (*Krieger* Compl. ¶¶ 63-76.)   Krieger asserts that the director defendants wrongfully caused the Company to grant an allegedly excessive and unwarranted severance package to Johnson (*Krieger* Compl. ¶ 70), and that Rogers aided and abetted the alleged breaches of fiduciary duty.  (*Id.* ¶¶ 77-[81]).  All defendants moved to dismiss the *Krieger* Complaint on November 14, 2012.

### D.      The *Tansey* and *Pinchuck* Actions.

Well after these six other sets of plaintiffs had filed their actions in multiple other courts, on August 17, 2012, Tansey filed a shareholder derivative action in this Court alleging that the legacy Duke directors and officers Lynn J. Good and Steven K. Young breached their fiduciary duties and wasted corporate assets, and that the legacy Duke directors also violated Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.  Specifically, Tansey repeats the allegation of the prior lawsuits that, despite public statements that Johnson would become the CEO of the combined Company, the Individual Defendants failed to disclose in the proxy statement filed on July 7, 2011 — more than one year before the Board asked for Johnson's resignation — that they did not believe that Johnson would be a capable CEO and that the Individual Defendants "intended to force Johnson to resign immediately after completion of

the merger."[14]  Tansey also repeats the assertion that the Individual Defendants caused Duke to make material misrepresentations to regulators, including the SEC[15] and exposed the Company to "billions of dollars in potential liability for violations of state and federal law." (*Tansey* Compl. ¶ 1.)  Among other things, Tansey requests "damages sustained by the Company as a result of the [Individual Defendants'] violations of the Exchange Act, breaches of fiduciary duties, and waste of corporate assets." (*Tansey* Compl. "Prayer for Relief.")

More than two months later, on October 26, 2012, Pinchuck filed another shareholder derivative complaint in this Court, alleging violations of: (i) Section 14(a) of the Exchange Act against the director defendants (*Pinchuck* Compl. ¶¶ 62-68); (ii) Section 21D of the Exchange Act against all Individual Defendants (*id.* ¶¶ 69-77); (iii) and Section 20(a) of the Exchange Act against the director defendants (*id.* ¶¶ 78-81).  Like the prior plaintiffs, Pinchuck also asserts that the legacy Duke Board members improperly failed to disclose their intention to replace Johnson,[16] and further that they caused the Company to incur various harms, including exposure to the Securities Class Actions.[17]  The *Pinchuck* Complaint also asserts a breach of fiduciary duty claim against the Individual Defendants (*id.* ¶¶ 82-87).  Like the derivative plaintiffs before him, Pinchuck concedes his failure to make any pre-litigation demand.[18]

---

[14] *Tansey* Compl. ¶ 3; *see also Pinchuck* Compl. ¶¶ 4, 30, 42; *Craig* Compl. ¶¶ 9, 12; *Nieman* Compl. ¶¶ 6-8; *Sunner* Compl. ¶¶ 8-11; *Rupp* Compl. ¶¶ 3, 6-8; *Raul* Compl. ¶¶ 1, 4.

[15] *See, e.g., Tansey* Compl. ¶¶ 7, 18; *see also Pinchuck* Compl. ¶¶ 30, 35; *Craig* Compl. ¶¶ 5-9; *Nieman* Compl. ¶¶ 40-50; *Sunner* Compl. ¶¶ 7-8; *Rupp* Compl. ¶¶ 8, 11; *Raul* Compl. ¶ 1.

[16] *Pinchuck* Compl.  ¶ 4; *see also Tansey* Compl. ¶¶ 52, 62; *Craig* Compl. ¶¶ 10-12; *Nieman* Compl. ¶¶ 55-56, 62, 64; *Sunner* Compl. ¶ 8; *Rupp* Compl. ¶¶ 25, 130; *Raul* Compl. ¶ 7.

[17] *Pinchuck* Compl. ¶¶ 43-53; *see also Tansey* Compl. ¶ 85; *Rupp* Compl. ¶ 131; *Raul* Compl. ¶¶ 120-35; *Craig* Compl. ¶ 58; *Nieman* Compl. ¶ 65; *Sunner* Compl. ¶ 130.

[18] *Pinchuck* Compl. ¶¶ 54-60; *see also Tansey* Compl. ¶¶ 93, 95; *Rupp* Compl. ¶ 138, *Raul* Compl. ¶ 138; *Krieger* Compl. ¶ 60.

ARGUMENT

The Court's power to stay these proceedings is "incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. American Co.*, 299 U.S. 248, 254 (1936); *see Hyland v. Harrison*, 2006 WL 288247, at *7 (D. Del. Feb. 7, 2006) (staying action pending parallel securities action in another jurisdiction). Courts "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55. Here, the Court should stay these actions in favor of the Securities Class Actions and abstain in favor of the State Derivative Actions pursuant to the doctrine announced in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

I.     THE COURT SHOULD STAY THESE RELATED ACTIONS PENDING RESOLUTION OF THE SECURITIES CLASS ACTIONS.

A.     These Cases Should Be Stayed To Prevent Prejudice To Duke and the Individual Defendants.

The *Tansey*, *Pinchuck* and Securities Class Actions involve the same parties, circumstances and alleged misconduct. In essence, the Complaints here assert that the Individual Defendants negligently, recklessly or knowingly caused Duke to make material misstatements or omissions in public filings with respect to Johnson's role at the combined Company – exactly the same allegations that underlie the federal Securities Class Actions. *Compare Tansey* Compl. ¶¶ 7, 42, 68, 85 *and Pinchuck* Compl. ¶¶ 4, 30, 64 *with Nieman* Compl. ¶¶ 40-41, 82; *Craig* Compl. ¶¶ 49-52; *Sunner* Compl. ¶¶ 8, 127-29.

Plaintiffs' pursuit of this litigation now is manifestly not in the best interests of Duke or its stockholders. To litigate their claims would require Plaintiffs to attack the credibility of the legacy Duke directors, who may also be witnesses in the Securities Class Actions. Moreover, if these actions are allowed to proceed past the motion to dismiss stage, Duke (through these

- 8 -

derivative plaintiffs) ostensibly would be alleging that the conduct of its directors was wrongful, while at the very same time attempting to maintain precisely the opposite in the Securities Class Actions. Federal and state courts have recognized the importance of staying derivative actions until related securities class actions are resolved in these circumstances.[19] Indeed, the entire predicate of the present actions is that (i) the legacy Duke directors decided prior to July 2, 2012, to replace Johnson as CEO of the merged Company, (ii) the directors wrongfully failed to disclose that allegedly impending termination to the NCUC or to the Company's stockholders, (iii) the directors' actions were improper, and (iv) the directors exposed the Company to harm. Prosecution of these derivative claims fundamentally conflicts with the Company's (and its co-defendants') defense of the Securities Class Actions, which are premised on substantially similar allegations. Plaintiffs in the Securities Class Actions also likely would claim that Defendants are collaterally estopped from challenging any adverse factual determinations made by this Court. Numerous cases have recognized that proceeding with derivative litigation cannot be in the best interests of the corporation and should not be permitted in these circumstances.[20]

---

[19]  *See, e.g., In re Groupon Deriv. Litig.*, 2012 WL 3133684, at *8 (N.D. Ill. July 31, 2012) ("Given the significant overlap between the two cases, and the potential prejudice to [the Company] should the present action proceed, the court concludes [the Company] would face hardship if forced to go forward at this juncture."); *In re Massey Energy Co.*, 2011 WL 2176479, at *27 (Del. Ch. May 31, 2011) (noting that findings of fact resulting from litigation of the derivative claims "could have serious implications for the pending securities cases" and that plaintiffs, as fiduciaries of the company, should be reluctant to prosecute the derivative actions until direct claims against the company and regulatory proceedings are resolved); *Rosenblum v. Sharer*, 2008 U.S. Dist. LEXIS 65353, *24 (C.D. Cal. Jul. 28, 2008) (noting that "denying a stay will potentially cause substantial harm to Amgen, the party on whose behalf this derivative action has been brought .... officers and director Defendants in the derivative action would be important witnesses for Amgen in the securities class action. This could potentially result in the liability of the officers being imputed to the corporation."); *Cucci v. Edwards*, 2007 WL 3396234, at *2 (N.D. Cal. Oct. 31, 2007) (staying derivative action because it "would likely conflict with [the Company's] defense" of a securities class action, because plaintiffs "would need to prove allegations that seriously undermine the [Company's] defense of the class action").

[20]  *See, e.g., Brenner v. Albrecht*, 2012 WL 252286, at *1, *6 (Del. Ch. Jan. 27, 2012) ("Prosecution of [the] derivative action would involve taking actions designed to refute the merits of the Company's defense of the Securities Class Action, and vice versa ... [s]taying
(Continued . . .)

B.   A Stay Is Necessary to Promote the Orderly Course of Justice, Avoid Duplicative Litigation and Prevent a Waste of Resources.

Staying this litigation in favor of the Securities Class Actions will preserve the resources of the Court and all parties.   These derivative actions are essentially conditional upon the outcome of the Securities Class Actions.[21]   *See, e.g., In re Groupon*, 2012 WL 3133684, at *5 ("[a] resolution of the class claims would significantly simplify the central issue in the derivative case, *i.e.*, the scope of the individual defendants' liability").   Accordingly, the Court of Chancery typically stays derivative cases that are premised on conduct that is the subject of federal litigation.   *Louisiana Municipal Police Employees' Retirement Sys. v. Pyott*, 46 A.3d 313, 344-45 (Del. Ch. 2012) ("If the underlying corporate trauma resulted from a … securities class action … there would likely be further developments that would yield additional information that could materially affect whether to sue.   This Court routinely stays indemnification-based derivative claims to allow the underlying action giving rise to potential liability to unfold"), *appeal*

---

(. . . continued)

this action for the immediate future would minimize these risks of prejudice to [the Company's ] defense of the Securities Class Action."); *Breault v. Folino*, 2002 WL 31974381, at *2 (C.D. Cal. Mar. 15, 2002) (staying derivative action rather than divert company's financial and management resources from pending securities class action and would involve efforts to undermine defendants' credibility).

[21]   Plaintiffs allege that Defendants' actions have "subject[ed]" Duke to securities lawsuits and investigations by the NCUC and others, and that this in and of itself constitutes damage. (*Tansey* Compl. ¶¶ 11, 85-87; *Pinchuck* Compl. ¶ 43.)   However, the vast preponderance of Plaintiffs' derivative claims, and any damage that Plaintiffs could conceivably recover, is dependent upon the Securities Class Actions being decided adversely to Duke.   Federal and state courts routinely stay derivative litigation under these circumstances. *See, e.g., Brenner*, 2012 WL 252286, at *6 (granting stay; "the full extent of damages will not be known until the Securities Class Action is resolved"); *In re Isolagen Inc., Sec. & Derivative Litig.*, 2007 WL 1101278, at *2 (E.D. Pa. Apr. 10, 2007) (finding the action premature where damages were "clearly contingent on the related securities class action lawsuit"); *In re Cray Inc. Derivative Litig.*, 431 F. Supp. 2d 1114, 1134 (W.D. Wash. 2006) ("[D]erivative claims are foreclosed when they merely allege damages based on the potential costs of investigating, defending, or satisfying a judgment or settlement for what might be unlawful conduct.").

*pending*, Del. Supr. No. 380,2012.[22]   A stay of these actions in the interim would preserve

resources needed to defend against the Securities Class Actions and ongoing regulatory

investigations.[23]

             C.       No Prejudice Would Result From a Stay of These Actions.

      In contrast to the hardship that moving forward with these actions would cause

Defendants, Plaintiffs will experience no prejudice as the result of a stay.  If Defendants are

successful in defending against the Securities Class Actions, and there is no finding of

wrongdoing on the part of the Individual Defendants, then the parties may consider that

information in deciding whether to pursue Plaintiffs' claims.  If, on the other hand, there is an

adverse judgment against Defendants in the Securities Class Actions, all parties will be in a

better position to evaluate whether, and against whom, to proceed.

---

[22] *See also Brenner*, 2012 WL 252286, at *1, *6 (staying derivative action in favor of class action where relief sought was "only partially contingent on the outcome of the Securities Class Action"); *Brudno v. Wise*, 2003 WL 1874750, at *4 (Del. Ch. Apr. 1, 2003) (staying derivative case pending federal securities action where practical considerations "make it unduly complicated, inefficient, and unnecessary for this Delaware Action to proceed ahead of or apace of the Federal Securities Action.").

[23] Tansey acknowledges as much, asserting that Duke "has been forced to interrupt its business and dedicate its resources and attention to remediating the Company's potential regulatory violations." (*Tansey* Compl. ¶ 131.)  Similarly, Tansey alleges that the Individual Defendants have "wasted corporate assets by forcing the Company to expend valuable resources in defending itself in the government investigations and Securities Class Actions that they brought on with their improper statements." (*Id.* ¶ 131; *see also Pinchuck* Compl. ¶¶ 9, 43-44.)  By reducing Defendants' need to litigate the same issues in multiple courts, a stay of these actions will help preserve the very resources that Tansey alleges may be wasted.

D.    The Relief Requested Relates to The Outcome of the
Pending Securities Class Actions.

A stay is warranted here because the relief requested in these actions relates to the

outcome of the Securities Class Actions.  *See, e.g., In re Groupon,* 2012 WL 3133684, at \*4-5;

*Brenner,* 2012 WL 252286, at \*6; *Brudno,* 2003 WL 1874750, at \*4; *see also In re Isolagen Inc.*

*Secs. & Deriv. Litig.,* 2007 WL 1101278, at \*2 (dismissing derivative action as premature where

plaintiff's damages were contingent on related federal securities class action); *In re Isolagen Inc.*

*Secs. & Deriv. Litig.,* 279 Fed. Appx. 133, \*2 (3d Cir. May 22, 2008) (noting that lower court's

"without prejudice dismissal effectively stayed further action in this case pending resolution of

another case.").

Here, Plaintiffs make direct correlations between alleged breaches of fiduciary duty and

purported disclosure violations.  (*See Tansey* Compl. ¶ 42; *Pinchuck* Compl. ¶¶ 82-87.)  For

instance, Tansey seeks indemnification for damages allegedly resulting from the Securities Class

Actions and equitable relief "[d]irecting Duke to take all necessary actions to reform and

improve its corporate governance and internal procedures to comply with applicable laws,"

including putting forth for shareholder vote "a proposal to strengthen the Company's disclosure

controls and procedures" (*Tansey* "Prayer for Relief" at 43).  His damages claim is contingent,

however, upon the outcome of the Securities Class Actions, and premised on a finding of

disclosure violations.  Thus, to the extent that these actions proceed at all, they should follow

rather than precede the resolution of the Securities Class Actions.  *See In re Massey Energy Co.,*

2011 WL 2176479, at \*27.

II.    THE COURT SHOULD ABSTAIN IN FAVOR OF THE STATE
DERIVATIVE ACTIONS.

Neither Duke, the party on whose behalf Plaintiffs purport to bring these actions, nor the

Individual Defendants, should be forced to litigate related issues simultaneously in multiple

venues.  If, however, the Court determines that it is appropriate for these cases to proceed notwithstanding the pending Securities Class Actions, this Court should defer to the Delaware Court of Chancery, which should have the first opportunity to make a binding determination of the adequacy of the proposed stockholder representative.  Under the two-step abstention analysis set forth in *Colorado River*, the Court should abstain in favor of *In re Duke Energy Corporation Derivative Litigation*, C.A. No. 7705-CS, pending before Chancellor Strine.

A.     These Actions Are Parallel to the State Derivative Actions.

A threshold issue when considering *Colorado River* abstention is whether the pending state and federal proceedings are parallel.  Generally, cases are parallel if they involve the same parties and "substantially identical" claims, raising "nearly identical allegations and issues." *Trent v. Dial Med. of Fla., Inc.*, 33 F.3d 217, 223 (3d Cir. 1994), *overruled in part on other grounds*.  The proceedings need not be identical, and the presence of additional parties or issues "does not necessarily preclude a finding that [proceedings] are parallel." *Bank of Okla., N.A. v. Tharaldson Motels II, Inc.*, 671 F. Supp. 2d 1058, 1062 (D.N.D. 2009); *accord In re Novell, Inc. Shareholder Litig.*, 2012 WL 458500, at *7 (D. Mass. Feb. 10, 2012) ("[T]he case law does not require absolute identity of the parties and issues, only substantial similarity.").  As demonstrated below, the actions filed belatedly here are parallel to the State Derivative Actions, and the *Colorado River* factors decisively support a stay.

1.     The Parties Are Substantially the Same.

These actions and the State Derivative Actions involve substantially the same parties.  In both cases, the named plaintiffs are individual Duke shareholders who claim to be pursuing derivative litigation on behalf of the Company.  Their interests are identical.  *See Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004) (holding that shareholder derivative suits with different named plaintiffs are identical because the company is the true party in interest); *see also Romaine v.*

*Compuserve Corp.*, 160 F.3d 337, 340 (6th Cir. 1998) (upholding the decision to abstain "where the interests of both the named plaintiffs and the identical putative classes they seek to represent are congruent, notwithstanding the nonidentity of the named parties."). With the exception of the officer defendants, Good and Young (who are also defendants in the Securities Class Actions), every Individual Defendant here is a defendant in the State Derivative Actions. This is more than sufficient to establish parallelism. *See, e.g., Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 695 (7th Cir. 1985) (requiring "substantial similarity," but not identity, of named parties because "[i]f the rule were otherwise, the *Colorado River* doctrine could be entirely avoided by the simple expedient of naming additional parties.").

> 2.  The Factual and Legal Issues Are Substantially the Same.

The core factual allegations asserted in these actions and the State Derivative Actions are identical, including that: (1) the merger agreement, as well as the Company's SEC filings, press releases and proxies, called for Johnson to serve as the CEO of the post-merger Company;[24] (2) despite these statements, the Duke Board voted to terminate Johnson and appoint Rogers as the CEO of the combined Company immediately after the merger;[25] and (3) the decision to terminate Johnson has resulted in damages, including to Duke's reputation, goodwill and standing among its regulators and in the business community, and have exposed the Company to litigation.[26]

The legal claims asserted in these actions and the State Derivative Actions also are essentially identical, charging the Board and senior management of Duke with failing to make

---

[24] *Tansey* Compl. ¶¶ 3-7; *Pinchuck* Compl. ¶¶ 4, 30; *Rupp* Compl. ¶ 3; *Raul* Compl. ¶ 4.

[25] *Tansey* Compl. ¶¶ 7-8; *Pinchuck* Compl. ¶¶ 5, 36; *Rupp* Compl. ¶¶ 95-101; *Raul* Compl. ¶¶ 7-9.

[26] *Tansey* Compl. ¶¶ 1, 11; *Pinchuck* Compl. ¶¶ 43-44; *Rupp* Compl. ¶¶ 130-31; *Raul* Compl. ¶¶ 120-35.

adequate disclosures to shareholders in connection with the merger and indistinguishable claims for alleged breaches of fiduciary duty and waste of corporate assets. (*Compare Tansey* Compl. ¶¶ 119-33 (alleged breaches of fiduciary duty and waste of corporate assets); *Pinchuck* Compl. ¶¶ 82-87 (alleged breaches of fiduciary duty); *with Rupp* Compl. ¶¶ 132-37 (alleged breaches of fiduciary duty); *Raul* Compl. ¶¶ 143-51 (alleged breaches of fiduciary duty and waste of corporate assets).)

Moreover, the State Derivative Actions and these actions involve substantially the same legal issues, including whether the shareholder plaintiffs are required to make a pre-suit demand on Duke's Board. Most significantly, the pre-suit demand issue must be addressed at the outset of these cases and the State Derivative Actions. Pursuant to Delaware law, which governs because Duke is incorporated in Delaware, a shareholder cannot sue on behalf of the Company without first making a demand on the Board or demonstrating that such a demand would be futile. Fed. R. Civ. P. 23.1; Del. Ch. R. 23.1. Neither set of plaintiffs has made a demand upon the Board,[27] and Defendants intend to demonstrate that demand is not futile because Plaintiffs failed to establish that the Company's directors are not independent or disinterested, and thus, capable of deciding whether to bring suit on behalf of the Company. This threshold issue will need to be resolved at the outset of these actions and the State Derivative Actions.

In order to resolve the claims asserted in the State Derivative Actions, the Court of Chancery also will be required to determine whether certain Duke officers and directors breached their fiduciary duties to disclose all material facts by failing to timely publicly disclose the decision to terminate Johnson and re-install Rogers as the CEO of the post-merger Company. (*See, e.g., Rupp* Compl. ¶ 6; *Raul* Compl. ¶ 7.) That inquiry echoes the "materiality" standard

---

[27] *Tansey* Compl. ¶¶ 88-103; *Pinchuck* Compl. ¶¶ 54-60; *Rupp* Compl. ¶¶ 138-44; *Raul* Compl. ¶¶ 136-42.

articulated by the Supreme Court for disclosure claims under the Exchange Act. *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976) ("An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote."). The State Derivative Actions thus will necessarily adjudicate the very issue on which Plaintiffs' claims for alleged violations of the Exchange Act turn.

Accordingly, although these actions include additional Exchange Act theories (the basis on which *Shields v. Murdoch*, 2012 WL 4097199 (S.D.N.Y. Sept. 18, 2012), declined to stay a consolidated derivative action), Plaintiffs' federal claims are merely duplicative of the disclosure claims asserted in the Court of Chancery. *See Calleros v. FSI Int'l, Inc.*, 2012 WL 4097832, at *3-*4 (D. Minn. Sept. 18, 2012) (granting stay of federal action asserting violations of Exchange Act and breach of fiduciary duty "because disposition of the state claims is 'substantially likely' to dispose of the Exchange Act claims.").

For instance, in *International Jensen Inc. v. Emerson Radio Corp.*, 1996 WL 494273 (N.D. Ill. Aug. 27, 1996), Emerson argued that the court was obligated to consider its Section 14(a) claim in connection with a merger transaction because of the "exclusive federal nature" of the claim. *Id.* at *3. There, a state action was pending in Delaware and based on Delaware law. *Id.* at *4. The federal court rejected Emerson's argument that the federal case should proceed at the same time as the state court action, holding that the actions were parallel because "Delaware common law recognizes claims based on material misstatements or omissions in proxies, similar to those brought under § 14(a)." *Id.* The court further noted that "the remedy offered by § 14(a) is duplicated in Delaware common law." *Id.* at *6. Based on these factors, the court stayed the federal action. *Id.* at *7.

*In re Novell* addressed the same situation. There, plaintiffs asserted state-law breach of fiduciary duty claims and violations of the Exchange Act, predicated on material misstatements

and omissions by corporate directors in a proxy statement, while substantially similar litigation was already pending in Delaware state court. The Court found the state and federal cases parallel, and abstained under *Colorado River*. *In re Novell*, 2012 WL 458500, at *8. *Accord, e.g., Giles*, 789 F. Supp. 2d at 712-13 (state and federal cases alleging, *inter alia*, misleading disclosures in proxy statement were parallel despite Exchange Act claim in federal action); *McCreary v. Celera Corp.*, 2011 WL 1399263, at *3 (N.D. Cal. Apr. 13, 2011) (same). A stay in favor of the State Derivative Actions likewise is warranted here.[28]

3.  The Court May Decline to Exercise Supplemental
    Jurisdiction Over the State-Law Claims.

The Court also may decline to exercise supplemental jurisdiction of the state-law fiduciary claims and stay these actions in favor of the consolidated action that is pending in the Court of Chancery. *See* 28 U.S.C. § 1367(c)(2) (where state-law claims substantially predominate over a federal claim, court may decline supplemental jurisdiction). Thus, this Court's ability "to decide ancillary questions of state law" does not mean that the Court "must tolerate a litigant's efforts to impose upon it what is in effect only a state law case." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727 (1966). *See also Lemon Bay Partners LLP v. Hammonds*, 2007 WL 1830899, at *4-5 (D. Del. June 26, 2007) (declining to exercise supplemental jurisdiction where Delaware fiduciary claims substantially predominated over

---

[28] As the *FSI Int'l* court recently noted, some cases, including *Giles*, have granted partial stays in similar circumstances, concluding that Exchange Act claims cannot be stayed even when abstention over related claims for alleged breaches of fiduciary duty is warranted. Others, including *In re Novell* and *McCreary*, have stayed all claims, including Exchange Act claims. *FSI Int'l*, 2012 WL 4097832, at *5 n.8. In this case, even if abstention over only some of claims were appropriate, the Court could – and should – nevertheless exercise its "inherent authority" to stay these cases pending resolution of the State Derivative Actions. The Court enjoys the inherent power to stay proceedings before it, "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254. A stay is appropriate to permit the Court of Chancery, where jurisdiction first attached, to adjudicate the issues before this Court reaches them. For the reasons discussed above, that adjudication may well have a significant impact on this case.

federal securities claim); *Litig. Trust of MDIP, Inc. v. Rapoport*, 2005 WL 1242157, at *5 (D. Del. May 25, 2005) (refusing to exercise supplemental jurisdiction over state-law claims where such claims predominated over the federal claims because to do so "would truly permit the tail to wag the dog.").

> B.      The *Colorado River* Factors Favor a Stay of these Actions.

In determining whether to abstain from hearing a case in favor of a concurrent state court proceeding, federal courts consider a number of factors, including whether: (1) the controversy involves a *res* or property; (2) the inconvenience of the federal forum; (3) staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) state or federal law provides the rule of decision; and (6) the state procedures are adequate to protect the plaintiff's federal rights. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983); *Colorado River*, 424 U.S. at 818-20.  "[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case." *Moses H. Cone*, 460 U.S. at 16.  The Court should stay these actions because the first two factors are inapplicable or neutral,[29] and the remaining *Colorado River* factors weigh heavily in favor of a stay.

> 1.      Abstention Will Avoid the Unfairness and Inefficiency That Would Result From Piecemeal Litigation.

Under these circumstances, abstaining plainly would avoid piecemeal litigation while still protecting the parties' rights.  The claims asserted in the State Derivative Actions for breach of fiduciary duty and waste are also asserted in these actions, and overlap substantially with the

---

[29] Here, no court has asserted jurisdiction over property in any proceeding, and the federal forum is located blocks from the Court of Chancery and is as convenient as the state forum.

Exchange Act claims. "Requiring the defendants to defend these lawsuits separately could inject a great deal of uncertainty," and Defendants "could face duplicative discovery requests and markedly different general litigation schedules in each court," *Giles*, 789 F. Supp. 2d at 713, as well as "the potential for harmful and inconsistent rulings." *In re Novell*, 2012 WL 458500, at *8.

> 2.   Abstention Will Allow the Court of Chancery to Rule on Substantive Issues of Controlling Delaware Law.

Because Duke is incorporated under the laws of Delaware (Compl. ¶ 17), Delaware state law controls the claims brought against Duke under the "internal affairs" doctrine. *See, e.g., Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 105-06 (1991) (holding that law of state of incorporation should apply to corporate claims). Such derivative claims rest "entirely on interpretation and application of [Delaware] law in which Delaware [state] courts have an important interest and expertise." *In re Novell*, 2012 WL 458500, at *8. Delaware law, for instance, governs the important threshold demand futility inquiry, and the Court of Chancery has a strong interest in resolving this dispute. *See Aetna Cas. & Sur. Co. v. Sterner*, 700 F. Supp. 252, 257 (E.D. Pa. 1988). ("Where all other factors are equal, our respect for notions of comity and federalism tip the balance in favor of deferring to a state court for resolution of state law issues.").

> 3.   The Court of Chancery Will Adequately Protect the Interests of All Parties.

The Court of Chancery, which "has a well-recognized expertise in the field of state corporation law," can fairly and completely adjudicate the facts underlying Plaintiffs' claims. *Strougo v. BEA Associates*, 2000 WL 45714, at *5 (S.D.N.Y. Jan. 19, 2010). The Court of Chancery can also provide Plaintiffs with the relief they seek, including money damages,

corporate governance reforms, attorneys' fees, or any other relief deemed to be proper.[30]

*Reserves Dev. LLC v. Severn Sav. Bank, SFB*, 961 A.2d 521, 525 (Del. 2008) ("The Court of Chancery has broad discretion to fashion equitable relief."). Here, Duke shareholders will benefit if these actions are stayed; otherwise, the Company may be obligated to reimburse the costs of multiple duplicative actions.

    4.    The Court of Chancery Consolidated Action Is Further Advanced Than These Actions.

The State Derivative Actions were filed before these actions and are more advanced. On August 13, 2012, the defendants filed a motion to dismiss the *Rupp* amended complaint pursuant to Court of Chancery Rule 23.1 because plaintiff failed to make a pre-suit demand and pursuant to Rule 12(b)(6) for failure to state a claim.[31] The *Rupp* and *Raul* actions have been consolidated, lead plaintiff and counsel motions are now briefed, and argument on those motions has been scheduled.

CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that these actions be stayed pending the resolution of the Securities Class Actions and this Court should abstain in favor of the State Derivative Actions, and that the Court grant Defendants such other and further relief as may be just and proper.

---

[30] The Exchange Act claims asserted here provide no basis on which to conclude that the State Derivative Actions are inadequate to Plaintiffs' interests. In fact, the state court plaintiffs' decisions not to litigate all of the claims asserted in these actions simply reflect the tactical decisions of experienced counsel, who have apparently (and wisely) concluded that the federal claims asserted here are not viable (and in any event, hinge on the outcome of the Securities Class Actions). *See, e.g., Gen. Elec. Co. by Levit v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992).

[31] On August 31, 2012, the *Rupp* plaintiffs filed a motion for summary judgment. Until Defendants' motion to dismiss is decided, however, Rupp and Bernstein (like all stockholders, including Plaintiffs) have no standing to prosecute a derivative claim on Duke's behalf, much less move for summary judgment. *See, e.g., Pyott*, 46 A.3d at 329 ("[U]ntil the derivative action has passed the Rule 23.1 stage, the stockholder does not have authority to assert the corporation's claims and is not suing in the name of the corporation.").

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Kenneth J. Nachbar*
A. Gilchrist Sparks, III (#467)
Kenneth J. Nachbar (#2067)
Susan W. Waesco (#4476)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
  *Attorneys for Defendants James E. Rogers,*
  *Michael G. Browning, G. Alex Bernhardt, Sr.,*
  *Ann Maynard Gray, James T. Rhodes, James H.*
  *Hance, Jr., William Barnet, III, Philip R. Sharp,*
  *Daniel R. DiMicco, John H. Forsgren, E. James*
  *Reinsch, Lynn J. Good, Steven K. Young, and*
  *Nominal Defendant Duke Energy Corporation*

OF COUNSEL:

Steven M. Bierman
Erica S. Malin
Jackie A. Lu
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300

November 19, 2012

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing to all registered participants including:

Blake A. Bennett
Cooch and Taylor P.A.
The Brandywine Building
1000 N. West Street, 10th Floor
P.O. Box 1680
Wilmington, DE  19899-1680

Joel E. Friedlander
Bouchard, Margules & Friedlander, P.A.
222 Delaware Avenue
Suite 1400
Wilmington, DE  19801

/s/ Susan Wood Waesco
Susan W. Waesco (#4476)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200