IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EDWARD TANSEY and WARREN PINCHUCK, suing derivatively on behalf of DUKE ENERGY CORPORATION, | ) ) ) ) | C.A. No. 12-cv-1049-RGA |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| JAMES E. ROGERS, MICHAEL G. BROWNING, G. ALEX BERNHARDT, SR., ANN MAYNARD GRAY, JAMES T. RHODES, JAMES H. HANCE, JR., WILLIAM BARNET, III, PHILIP R. SHARP, DANIEL R. DIMICCO, JOHN H. FORSGREN, and E. JAMES REINSCH, | ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| DUKE ENERGY CORPORATION, | ) ) | |
| Nominal Defendant. | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS THE VERIFIED CONSOLIDATED AMENDED
<u>SHAREHOLDERS' DERIVATIVE COMPLAINT</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Kenneth J. Nachbar (#2067)
Susan W. Waesco (#4476)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
knachbar@mnat.com
swaesco@mnat.com
(302) 658-9200
  *Attorneys for Defendants James E. Rogers,*
  *Michael G. Browning, G. Alex Bernhardt, Sr.,*
  *Ann Maynard Gray, James T. Rhodes, James H.*
  *Hance, Jr., William Barnet III, Philip R. Sharp,*
  *Daniel R. DiMicco, John H. Forsgren and E.*
  *James Reinsch, and Nominal Defendant Duke*
  *Energy Corporation*

OF COUNSEL:
Jack B. Jacobs (#000008)
SIDLEY AUSTIN LLP
1201 North Market Street
Suite 1402
Wilmington, DE 19801
(302) 654-1805

Steven M. Bierman
Andrew W. Stern
Jackie A. Lu
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019

February 19, 2016

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................... iii

NATURE AND STAGE OF THE PROCEEDINGS ................................................... 1

SUMMARY OF ARGUMENT ................................................................... 1

STATEMENT OF FACTS ....................................................................... 3

    A.    The Merger Agreement, Shareholder Vote, and Regulatory Approvals. ........................................................................... 3

    B.    The Director Defendants Consider Duke Energy's Leadership. ...................................................................... 4

        1.    Concerns Arising Before the August 2011 Shareholder Vote. ............................................................. 4

        2.    Concerns Arising After the August 2011 Shareholder Vote. ............................................................. 5

        3.    The Independent Directors Consider Alternatives in 2012. ................................................................. 6

        4.    The July 2, 2012 Meeting of the Combined Board of Directors. .............................................................. 6

    C.    The NCUC and North Carolina Attorney General Investigation. ...................................................................... 7

    D.    The Shareholder Lawsuits. .................................................................. 7

ARGUMENT ...................................................................................... 9

    I.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM. ......................................................... 9

        A.    The Complaint Fails to Plead with Particularity a Violation of Section 14(a). ................................................... 10

            1.    The Proxy Statement Did Not Contain A Material Misrepresentation or Omission. .............................................. 10

            2.    Plaintiffs Do Not Adequately Plead Transaction and Loss Causation. ............................................................ 12

        B.    The Complaint Fails to Allege a Section 20(a) Claim. ............................. 13

C. The Complaint Fails to Plead a Contribution Claim Under Section 21(D). ...........................................................................14

D. The Complaint Fails to Plead a Breach of the Fiduciary Duty of Loyalty. ........................................................................17

1. Plaintiffs Have Not Alleged A Knowing Violation of the Law. ..................................................................18

2. The Complaint Does Not State A Claim For Breach of the Duty of Oversight. ............................................21

II. THE COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFFS FAILED TO PLEAD THAT DEMAND WOULD HAVE BEEN FUTILE. .......................................................................22

A. The Rule 23.1 Pleading Standard. ...............................................22

B. The Krieger Court Conclusively Determined the Issue of Demand Futility. ..........................................................................23

C. Even If The Issue Is Considered Anew, This Court Should Find That Demand Was Required. ...............................................25

1. Plaintiffs Fail to Allege Demand Excusal Against the 2015 Board, and Therefore Lack Standing to Assert Their Contribution Claim. ....................................26

2. Plaintiffs Have Failed to Plead With Particularity Facts Sufficient to Overcome the Presumption of the Business Judgment Rule. ...........................................27

3. Plaintiffs Have Not Pled Facts Establishing A Reason to Doubt the Board's Independence. .................29

4. Plaintiffs Have Failed to Plead A Reason to Doubt the Director Defendants Satisfied Their Oversight Duties. .........................................................................30

CONCLUSION ...................................................................................................30

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Andropolis v. Red Robin Gourmet Burgers, Inc.*,
  505 F. Supp. 2d 662 (D. Colo. 2007)..................................................................20

*Anspach v. City of Phila.*,
  503 F.3d 256 (3d Cir. 2007)............................................................................17

*Aronson v. Lewis*,
  473 A.2d 805 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*,
  746 A.2d 244 (Del. 2000) ....................................................................22, 23, 27

*Asbestos Workers Local 42 Pension Fund v. Bammann*,
  2015 WL 2455469 (Del. Ch. May 22, 2015).......................................................24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................9

*Badger v. So. Farm Bureau Life Ins. Co.*,
  612 F.3d 1334 (11th Cir. 2010) .......................................................................20

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*,
  845 A.2d 1040 (Del. 2004) ..............................................................................25

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).........................................................................................9

*In re BJ's Wholesale Club, Inc. S'holders Litig.*,
  2013 WL 396202 (Del. Ch. Jan. 31, 2013).........................................................18

*Blasband v. Rales*,
  971 F.2d 1034 (3rd Cir. 1992) .........................................................................27

*Brower v. Killens*,
  472 S.E.2d 33 (N.C. Ct. App. 1996) .................................................................24

*Cal. Public Emp. Ret. Sys. v. Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004).............................................................................9

*Canty v. Day*,
  13 F. Supp. 3d 333 (S.D.N.Y. 2014).................................................................28

*In re Caremark Int'l Inc. Derivative Litig.*,
  698 A.2d 959 (Del. Ch. 1996)..........................................................................21

*In re Cendant Corp. Litig.,*
    264 F.3d 286 (3d Cir. 2001) ........................................................................................16

*In re Cendant Corp. Derivative Litig.,*
    96 F. Supp. 2d 394 (D.N.J. 2000) ...............................................................................26

*Ciro Inc. v. Gold,*
    816 F. Supp. 253 (D. Del. 1993) .................................................................................17

*In re Citigroup Inc. S'holder Derivative Litig.,*
    964 A.2d 106 (Del. Ch. 2009) ........................................................................19, 27, 28

*Cline v. McCullen,*
    557 S.E.2d 588 (N.C. App. Ct. 2001) ..........................................................................24

*In re Digital Island Sec. Litig.,*
    357 F.3d 322 (3d Cir. 2004) ........................................................................................13

*Fromer* v. *Yogel,*
    50 F. Supp. 2d 227 (S.D.N.Y. 1999) ...........................................................................16

*Gen. Elec. Co. v. Cathcart,*
    980 F.2d 927 (3d Cir. 1992) .............................................................................10, 12, 13

*Gilbert v. El Paso,*
    490 A.2d 1050 (Del. Ch. 1984) ...................................................................................20

*In re GM Co. Derivative Litig.,*
    2015 WL 3958724 (Del. Ch. June 26, 2015), *aff'd* --- A.3d ---, 2016 WL
    552651 (Del. Feb. 11, 2016) ........................................................................................30

*Greebel v. FTP Software, Inc.,*
    194 F.3d 185 (1st Cir. 1999) ........................................................................................14

*Grimes v. Vitalink Commc'ns Corp.,*
    17 F.3d 1553 (3d Cir. 1994) ........................................................................................23

*Guttman v. Huang,*
    823 A.2d 492 (Del. Ch. 2003) ...............................................................................21, 23

*Higher Educ. Mgmt. Grp., Inc. v. Matthews,*
    2014 WL 5573325 (Del. Ch. Nov. 3, 2014) ...............................................................29

*Kamen v. Kemper Fin'l Servs., Inc.,*
    500 U.S. 90 (1991) ......................................................................................................22

*King v. Grindstaff,*
    200 S.E.2d 799 (N.C. 1973) ........................................................................................24

*La. Mun. Police Emps. Ret. Sys. v. Blankfein*,
   2009 WL 2191243 (S.D.N.Y. July 20, 2009) ........................................................27

*In re Lear Corp. S'holder Litig*,
   967 A.2d 640 (Del. Ch. 2008) ................................................................................18

*In re NAHC, Inc., Sec. Litig.*,
   2001 WL 1241007 (E.D. Pa. Oct. 17, 2001) ..........................................................13

*In re NAHC, Inc. Secs. Litig.*,
   306 F.3d 1314 (3d Cir. 2002) ............................................................................3, 11

*N.Y. City Emps.' Ret. Sys. v. Jobs*,
   593 F.3d 1018 (9th Cir. 2010), *overruled in part on other grounds by Lacey v.*
   *Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) .........................................................12

*Norfolk Cty. Ret. Sys. v. Jos A. Bank Clothiers, Inc.*,
   2009 WL 353746 (Del. Ch. Feb. 12, 2009) ............................................................19

*In re NYMEX S'holder Litig.*,
   2009 WL 3206051 (Del. Ch. Sept. 30, 2009) .........................................................18

*O'Leary v. Liberty Mut. Ins. Co.*,
   923 F.2d 1062 (3d Cir. 1991) ................................................................................23

*Pall v. KPMG, LLP*,
   2006 WL 2800064 (D. Conn. Sept. 29, 2006) ........................................................26

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
   998 F.2d 1192 (3d Cir. 1993) ..................................................................................5

*Pyott v. La. Mun. Police Emps.' Ret. Sys.*,
   74 A.3d 612 (Del. 2013) .................................................................................24, 25

*Rales v. Blasband*,
   634 A.2d 927 (Del. 1993) .........................................................................22, 23, 29

*Ray v. Citigroup Global Markets, Inc.*,
   2004 WL 1794927 (N.D. Ill. Aug. 4, 2004) ..........................................................14

*Sea-Land Serv., Inc. v. United States*,
   874 F.2d 169 (3d Cir. 1989) ..................................................................................26

*Seinfeld v. O'Connor*,
   774 F. Supp. 2d 660 (D. Del. 2011) .......................................................................17

*Sommers ex rel. FLIR Sys., Inc. v. Lewis*,
   641 F. Supp. 2d 1151 (D. Or. 2009) ......................................................................14

*South v. Baker*,
    62 A.3d 1 (Del. Ch. 2012) ..............................................................................22, 30

*Stone v. Ritter*,
    911 A.2d 362 (Del. 2006) ...............................................................................17, 21

*Tellabs v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ...............................................................................................10

*In re VeriSign, Inc. Derivative Litig.*,
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) ...................................................... 13-15, 27

*Whitacre P'ship v. Biosignia, Inc.*,
    591 S.E.2d 870 (N.C. App. Ct. 2004) ......................................................................24

*Williams v. Peabody*,
    719 S.E.2d 88 (N.C. Ct. App. 2011) ........................................................................25

*Wood v. Baum*,
    953 A.2d 136 (Del. 2008) .......................................................................................28

**Rules and Statutes**

8 *Del. C.* § 102(b)(7) ...............................................................................................17

15 U.S.C. § 78t(a) ....................................................................................................13

15 U.S.C. § 78u-4 .................................................................................9, 12, 14, 15

28 U.S.C. § 1367 .....................................................................................................17

17 C.F.R. § 240.14a-9 .........................................................................................10, 11

Fed. R. Civ. P. 8 .......................................................................................................9

Fed. R. Civ. P. 23.1 .................................................................................................22

The Director Defendants[1] and Nominal Defendant Duke Energy Corporation ("Duke Energy" or the "Company") submit this brief in support of their Motion to Dismiss the Verified Consolidated Amended Shareholders' Derivative Complaint (the "Complaint") pursuant to Federal Rules of Civil Procedure 23.1 and 12(b)(6).

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Edward Tansey filed his original complaint with this Court on August 17, 2012, and Plaintiff Warren Pinchuck followed suit on October 26, 2012. *Pinchuck* D.I. 1. On May 31, 2013, the two cases were consolidated into the present action. D.I. 62. On September 2, 2014, this Court administratively closed this matter pending the resolution of the related securities class action, *Nieman v. Rogers et al.*, 3:12-cv-00456-MOC-DSC, in the Western District of North Carolina. D.I. 66. After a final judgment was entered in *Nieman* on November 2, 2015, this Court reopened this case on December 2, 2015. D.I. 76. On December 21, 2015, Plaintiffs filed the operative Complaint. D.I. 77.

## SUMMARY OF ARGUMENT

This action challenges the Independent Directors' exercise of business judgment regarding one of the most important decisions a board of directors may face: a decision to replace the company's CEO. In July 2012, the Independent Directors concluded, in their business judgment, that it was not in the best interests of Duke Energy stockholders for William Johnson to lead the company following the merger of Duke Energy and Progress Energy, Inc. ("Progress"). The allegations of the Complaint make clear that this decision was not made

---

[1] The "Director Defendants" are James E. Rogers, Michael G. Browning, G. Alex Bernhardt, Sr., Ann Maynard Gray, James T. Rhodes, James H. Hance, Jr, William Barnet III, Philip R. Sharp, Daniel R. DiMicco, John H. Forsgren, and E. James Reinsch. With the exception of Rogers, a former board member and CEO of Duke Energy, the Director Defendants are current and former independent directors of Duke Energy (hereinafter, the "Independent Directors").

lightly.  The Independent Directors were fully mindful of the importance of the decision, and took action only after much discussion and consideration during the final months preceding the closing of the merger.

Duke Energy and certain of its officers and directors subsequently were named as defendants in a federal securities class action challenging the disclosures made before the Duke-Progress merger about the CEO position.  That action settled in 2015 without any admission of liability, and all defendants were released from all claims.

In this action, Plaintiffs, two individual shareholders in Duke Energy, essentially attempt to reassert those released claims derivatively on behalf of the Company, but only against the Director Defendants, whom Plaintiffs allege harmed the Company by failing to disclose a preconceived, surreptitious scheme to remove Johnson that was allegedly hatched before the August 2011 shareholder vote approving the merger.  They allege claims under Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") relating to the 2011 proxy statement, contribution claims under Section 21D of the Exchange Act for a purported violation of Section 10 of the Exchange Act, and state law breach of fiduciary duty claims.  The Complaint fails because Plaintiffs have not met the high burden necessary to plead an actionable claim, let alone establish that they have standing to pursue the claims derivatively.  In summary:

1.     The Court should dismiss the Complaint for failure to state a claim under Rule 12(b)(6).  Plaintiffs have not adequately alleged violations of Sections 14, 20(a), and 21D of the Exchange Act, or any state law claim for breach of fiduciary duty.

2.     The Complaint should be dismissed under Rule 23.1.  Plaintiffs failed to make a pre-suit demand upon the Company's Board, and are collaterally estopped from relitigating demand futility because a North Carolina court, based on the same underlying conduct at issue

here, previously found that demand was not futile.  Moreover, even if this Court were to consider this issue anew, the Complaint makes no particularized allegations establishing a reason to doubt the Independent Directors' business judgment or their disinterestedness and independence in determining to replace Johnson as CEO.  Plaintiffs' failure to make a demand, either at the time the initial complaint was filed in 2012 or when the amended complaint was filed in December 2015, is not excused, and precludes them from proceeding on the Company's behalf.

## STATEMENT OF FACTS[2]

### A.      The Merger Agreement, Shareholder Vote, and Regulatory Approvals.

On January 10, 2011, Duke Energy and Progress announced an agreement to merge the two companies.  Compl. ¶¶ 59, 64.  Under the terms of the merger agreement, Johnson, then the CEO of Progress, would become the President and CEO of the combined company and James Rogers, then CEO of Duke Energy, would become the Executive Chairman.  *Id.* ¶ 62.  At the time of the merger announcement, Progress and Duke Energy targeted a closing date at the end of 2011.  Transmittal Affidavit of Susan W. Waesco ("Waesco Aff.") Ex. A at 46.

On July 7, 2011, Duke Energy filed an amended registration statement Form S-4 (Amendment 5), which included its merger proxy (the "Proxy").  Compl. ¶ 70; Waesco Aff. Ex. A.  The Proxy stated that "Johnson will serve as the president and chief executive officer of [the combined] Duke Energy[.]"  Waesco Aff. Ex. A at 112.  The Proxy also incorporated the term sheets for Rogers and Johnson, which reflected the "material terms of [their post-merger] employment with Duke," including the provision that Johnson could be "involuntarily terminated without cause" *at any time* after the merger closed.  Compl. ¶ 71; Waesco Aff. Ex. A at Annex

---

[2]  For purposes of this motion only, non-conclusory factual allegations are drawn from the Complaint and documents incorporated therein by reference or documents of which the Court may take judicial notice.  *See, e.g.*, *In re NAHC, Inc. Secs. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (court may take judicial notice of documents filed with the SEC and other public documents).

A, § 1.07(b) & Ex. B at § 5.  Duke Energy and Progress shareholders approved the merger at separate special meetings on August 23, 2011.  Compl. ¶ 75.

Duke Energy and Progress also sought to obtain merger approvals from state and federal regulatory agencies, including the Federal Energy Regulatory Commission ("FERC"), and North Carolina Utilities Commission ("NCUC").  *Id.* ¶ 3.  Because of the lengthy delays in obtaining regulatory approvals, the termination date under the merger agreement was extended to July 8, 2012.  *Id.* ¶ 87.  Final FERC approval was obtained by June 25, 2012.  *Id.* ¶¶ 100, 102.  The NCUC granted approval on June 29, 2012.  *Id.* ¶ 102.

> **B.     The Director Defendants Consider Duke Energy's Leadership.**
>
> **1.     Concerns Arising Before the August 2011 Shareholder Vote.**

During the merger negotiations in the second half of 2010, the pre-merger Duke Energy Board considered the benefits of the merger, and the proposal that Johnson would serve as the CEO of the combined company.  Compl. ¶¶ 57-59.  On November 19, 2010, Johnson attended a Duke Energy Board meeting.  *Id.* ¶ 77.  After that meeting, director DiMicco wrote in an email to Rogers, "I know I was the only one that really does see Bill [Johnson] as a threat to the deals [sic] success.  I have to tell you I was very disturbed by the view *if it doesn't work out* with Bill we will make the change in 2 years or so."  *Id.* ¶ 78 (emphasis added); *see also id.* ¶ 121.  As director Ann Gray later testified, at the time, the other 10 directors did not share DiMicco's concerns, and although one of Johnson's comments during the November 2010 meeting "stayed" with Gray, the comment was "absolutely" not a "knockout."  *Id.* ¶ 116; *see also id.* ¶ 77.

At the time the parties signed the merger agreement in January 2011, there was some concern as to whether Johnson was the "right guy" to lead the combined company because he only had four years of experience as a CEO and had never run a company as large as Duke

Energy would be post-merger.  *Id.* ¶ 79; Waseco Aff. Ex. C at 45:16-24, 46:1-22.[3]  That concern

did not outweigh the benefits of the merger, however, and, "at the end of the day, the discussions

about [Johnson] . . . were favorable and [Rogers] was very supportive of [Johnson]."  Waesco

Aff. Ex. C at 46:6-22; Compl. ¶ 71, 99, 123.

Rogers and Johnson led the process of integrating the two companies.  In April 2011, in

an email to certain Duke Energy executives, Rogers noted that he reported to Gray about the

integration "expressing [his] views (tone/arrogance/lack of respect/inflated sense of capability

especially in light of their track record)," and that director Gray was "properly concerned about a

clash of cultures."  Compl. ¶ 79.  However, Rogers stated that he wanted to "address these

issues" as the executives "kick them to Bill [Johnson] and me to resolve."  *Id.* ¶ 79.  There was

no indication at that time that Johnson himself was the source of the "clash of cultures" or that

the Board had made any decision to remove Johnson as CEO after the merger closed.

Contrary to Plaintiffs' assertions (*id.* ¶¶ 80-83, 122), there are no well-pled facts that the

Board's views about Johnson as CEO had changed before August 2011*,* and Gray testified that it

was not until the first six months of *2012* that the Independent Defendants began to lose

"confidence" in Johnson.  Waesco Aff. Ex. D at 28:11-19; 29:9-20; 30:1-31:19.

### 2.      Concerns Arising After the August 2011 Shareholder Vote.

As the parties worked to obtain regulatory approvals, the Director Defendants received

reports from management concerning the integration of the to-be-merged companies.  *See*

Waesco Aff. Ex. D at 52:15-55:18, 64:19-66:4, 68:11-69:3.  From these reports, the Director

---

[3] The Complaint extensively cites to the NCUC testimony transcripts of Browning, Gray, and
Rogers.  *See, e.g.*, Compl. ¶¶ 73, 74, 79, 99, 123 (Browning testimony); ¶¶ 73, 74, 77, 81, 95, 98,
99, 116, 118, 119, 120, 121, 144, 149, 159, 200, 201, 213 (Gray testimony); *see id.* ¶¶ 73, 94,
114, 150, 151, 190 (Rogers testimony).  This Court may consider the transcripts because they are
incorporated by reference and integral to the Complaint, and are matters of public record.  *See
Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993);
Compl. ¶ 77 n.3 (transcripts "part of the public record").

Defendants learned much about Johnson, his management and leadership style, and the performance of Progress and certain of its assets. *See id.* The Director Defendants were particularly concerned by events relating to Progress' Crystal River nuclear plant and the plant's insurance coverage, the status of Progress' other nuclear operations, Progress' financial results, and the strained relationship between the two companies' leadership teams as they worked to obtain regulatory approvals and integrate the two companies. *See id.*; *see also id.* Ex. C at 51:22-52:21, 54:19-56:16; *see* Compl. ¶¶ 144, 146-160.

### 3. The Independent Directors Consider Alternatives in 2012.

On May 3, 2012, the Independent Directors met in executive session to discuss their concerns about Johnson's capabilities as CEO. Compl. ¶ 95; Waesco Aff. Ex. D at 69:8-71:8. In that regard, the Independent Directors consulted with legal counsel and held a Corporate Governance Committee meeting on May 21, 2012 to ensure that they understood the alternatives available to them and their fiduciary duties. Waesco Aff. Ex. D at 69:8-71:8; *id.* at 72:12-74:10; Compl ¶¶ 95, 99. On May 30, 2012, during a special executive session, the Independent Directors had further discussions that focused primarily on three alternatives: (1) approach Progress before completion of the merger and raise their concerns, risking a scuttling of the merger; (2) complete the merger and defer consideration of any action with respect to the CEO; (3) complete the merger and consider taking action with respect to the CEO position immediately thereafter. Waesco Aff. Ex. D at 75:3-76:14, 79:6-10, 81:4-9; *see also* Compl. ¶¶ 98-99. The Independent Directors deferred further consideration of these options until the next Board meeting that was held on June 25 and 26, 2012. Waesco Aff. Ex. D at 81:10-15. Rogers did not participate in the executive sessions in May and June, and only learned of the Independent Directors' preliminary view on June 23, 2012. Compl. ¶ 73; Waesco Aff. Ex. E at 22:16-26:3.

### 4. The July 2, 2012 Meeting of the Combined Board of Directors.

The merger closed on July 2, 2012, at which time Johnson became CEO of the combined company.  Compl. ¶ 104.  That same day, during an executive session of the Board, Gray introduced a motion to remove Johnson as CEO and reinstate Rogers.  *Id.* ¶ 105.  After well over an hour of discussion, during which the Progress directors commented on their experience with Johnson and argued against terminating him, the ten legacy Duke Energy directors (excluding Rogers) voted in favor of the motion, and the five former Progress directors voted against.  *Id.* Johnson resigned later that day and the Company filed a Form 8-K disclosing the change in CEO on the morning of July 3, 2012.  *Id.* ¶ 135.

> ### C.    The NCUC and North Carolina Attorney General Investigation.

On July 6, 2012, the NCUC initiated an investigation of its earlier approval of the merger and called public hearings concerning Johnson's resignation.  Compl. ¶¶ 11-13.  The NCUC required oral testimony from certain executives and directors, including Johnson, Rogers, Browning, and Gray.  On November 29, 2012, the NCUC and Duke Energy entered into a settlement.  *Id.* ¶¶ 173-175.  The Attorney General of North Carolina also initiated an investigation, which Duke Energy settled on December 3, 2012.  *Id.* ¶¶ 13, 176-177.

> ### D.    The Shareholder Lawsuits.

*Securities Class Action.*  Following closing of the merger in 2012, several stockholders filed putative class actions against Duke Energy and certain officers and directors alleging violations of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 and Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder arising from the Company's public statements relating to the change in CEO.  *See* Compl. ¶¶ 38, 127-136.  The lawsuits were consolidated as *Nieman v. Duke Energy Corporation et al.* ("Securities Class Action"), in the Western District of North Carolina.  In November 2015, the Court granted final approval to a settlement in which the class released all claims, and the Defendants agreed to pay

approximately $146 million, $25 million of which was paid by Duke Energy with the remainder paid by insurance carriers.  Compl. ¶¶ 11, 38.  The final judgment provides that the settlement and all negotiations "shall not . . . be construed or deemed to be evidence of a presumption, concession or admission on the part of . . . any Settling Defendant . . . of any liability or wrongdoing of any nature by them."  Waesco Aff. Ex. F ¶ 11.

*Krieger North Carolina Action.*   On July 20, 2012, Joel Krieger, a Duke Energy stockholder, filed a derivative action in North Carolina state court (the "North Carolina Court").  The *Krieger* complaint alleged, *inter alia*, that the Independent Directors had breached their fiduciary duties by misrepresenting the Company's intention to appoint Johnson as CEO of the combined company, conspiring to remove Johnson after one day of employment, and paying him a severance package of over $44 million.  Waesco Aff. Ex. G ¶¶ 2-3, 42-43.[4]  As in this case, Krieger did not make a demand on the Board before filing his complaint, and instead alleged that demand was excused because a majority of the Board was incapable of "disinterestedly and independently considering a demand" because they faced a substantial likelihood of personal liability "for breaching their fiduciary duties and wasting corporate assets by terminating Johnson and paying him a $44 million severance package."  *Id.* ¶ 62.  In April 2014, the North Carolina Court granted the Director Defendants' motion to dismiss, holding that presuit demand was not excused.  Waesco Aff. Ex. H at *8.

*Delaware Court of Chancery Lawsuit.*   Duke Energy stockholders also filed five derivative actions in the Delaware Court of Chancery that were consolidated and captioned *In re Duke Energy Corporation Derivative Litigation*, No. 7705-VCN (the "Chancery Action").  The plaintiffs in the Chancery Action allege that the Director Defendants, in violation of their

---

[4] Krieger also alleged a claim against Rogers for aiding and abetting the Independent Directors' alleged breaches of fiduciary duties.  Waesco Aff. Ex. G at 17-18.

fiduciary obligations, intentionally conspired to terminate Johnson and misled the NCUC, SEC, and stockholders by concealing their plan.  Waesco Aff. Ex. I ¶¶ 8, 133.  Defendants' motion to dismiss the Chancery Action is *sub judice*.

## ARGUMENT

### I.  THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Under Fed. R. Civ. P. 12(b)(6), a motion to dismiss must be granted if the complaint fails to plead facts sufficient to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  Although all allegations of material fact are taken as true, the Court may disregard conclusory allegations.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  Claims that sound in fraud, like the federal securities claims asserted here, must also satisfy the heightened pleading standards mandated by Fed. R. Civ. P. 9(b).  *See Cal. Public Emp. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 156 (3d Cir. 2004).  This Complaint unquestionably "sounds in fraud."[5]  Additionally, the Complaint's Exchange Act claims must meet the heightened pleading standard under the Private Securities Litigation Reform Act ("PSLRA").  15 U.S.C. § 78u-4; *see Chubb*, 394 F.3d at 141-45 (applying the PSLRA to Sections 10 and 14(a) claims).  Accordingly, Plaintiffs "must state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the Defendants' intention 'to deceive, manipulate, or defraud.'"  *Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

---

[5] Plaintiffs perfunctorily disclaim any allegations of fraud relating to their Section 14(a) claims (*see* Compl. ¶¶ 42, 124), but the Complaint plainly sounds in fraud. Plaintiffs repeatedly allege that the Director Defendants conspired to conceal their alleged plot to oust Johnson (*see, e.g.*, Compl. ¶¶ 80, 117, 120, 132(a), 222, 235), thereby causing Duke Energy to prepare, file, and disseminate the Proxy and other filings that were materially "false and misleading" (*id.* ¶¶ 219-220, 222-223, 234-240).  Regardless, Plaintiffs' claims also fail to meet even the more lenient requirements under Fed. R. Civ. P. 8.

## A.       The Complaint Fails to Plead with Particularity a Violation of Section 14(a).

Under Section 14(a) of the Exchange Act, "it is unlawful to solicit proxies in contravention of 'such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors.'" *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 932 (3d Cir. 1992) (citation omitted).  Under SEC Rule 14a-9, "[n]o solicitation subject to this regulation shall be made by means of any proxy statement . . . which, at the time . . . it is made, is false or misleading with respect to any material fact[.]"  17 C.F.R. § 240.14a-9. To plead a Section 14(a) claim, a plaintiff must demonstrate that "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was 'an essential link in the accomplishment of the transaction.'" *Cathcart*, 980 F.2d at 932 (citation omitted).  As discussed below, Plaintiffs fall far short of this pleading standard.  *First*, they do not allege a basis for concluding that the Proxy was false at the time it was issued.  *Second*, they fail to plead both transaction and loss causation.

## 1.       The Proxy Statement Did Not Contain A Material Misrepresentation or Omission.

The Complaint alleges that the Proxy was "materially false" because, before the final Proxy was disseminated in July 2011 and despite the Proxy's representation that Johnson would serve as the CEO of the combined company, in fact, the Director Defendants "were opposed to Johnson becoming CEO of the post-Merger Duke."  Compl. ¶¶ 70, 124-126.  But Plaintiffs do not plead a single non-conclusory fact supporting an inference that, when the stockholders voted in **August 2011**, the Director Defendants did not honestly believe that Johnson would be the CEO of the combined company.  The Proxy was accurate when it was issued and at the time of the shareholder vote.  *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002) ("To

be actionable, a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events."); *see also* 17 C.F.R. § 240.14a-9.

The allegations of the Complaint lay bare the deficiencies of Plaintiffs' Section 14(a) claim. Specifically: (i) as of January 2011, there was "some concern" that Johnson was not the "right guy," in part because he did not have a proven track record of managing a large company (Compl. ¶ 79; Waesco Aff. Ex. C at 45:16-46:22), but only one director (out of 11) thought that Johnson was a real concern to the merger's success (Compl. ¶ 78); (ii) as of April 2011, Rogers spoke with Gray about tensions arising from the integration process, including the Progress' team's perceived arrogance (*id.* ¶ 79); and (iii) at a June 2011 Board meeting, Johnson's interaction with one director had "tempered [the directors'] enthusiasm for the conduct of [the Board] meeting" (*id.* ¶ 81 (citation omitted)).

What the Complaint itself establishes, contrary to Plaintiffs' conclusions, is that the Independent Directors were continuing to discuss their concerns about Johnson and alternative means of addressing those concerns in May and June 2012—months after the Proxy was issued and the stockholders of both companies had approved the merger. *See* Compl. ¶ 73 (quoting Rogers' NCUC Testimony, "I was advised [of] the nature and extent of the board's concerns with Mr. Johnson by the lead director on June 23, [2012] . . . . They said they had reached the *preliminary view* that Mr. Johnson was not the best person to lead the combined company, *but that no decision had been made at that time*.") (emphasis added)); Waesco Aff. Ex. E at 22:16-23:22); *see also id.* ¶ 74 (defendants "substantially determined" that Johnson was unfit to serve as CEO by "sometime in May 2012"); *id.* ¶ 118 (quoting Director Gray's statement that it was not until the six months before the merger closed in July 2012 that the Director Defendants began to lose confidence). In short, nothing in the Complaint cognizably shows that the

challenged statements in the Proxy were "false or misleading" at the time they were made in July 2011 or at the time of the stockholder vote on August 23, 2011.

### 2. Plaintiffs Do Not Adequately Plead Transaction and Loss Causation.

As the Third Circuit has held, "damages are recoverable under Section 14(a) only when the votes for a specific corporate transaction requiring shareholder authorization, such as a corporate merger, are obtained by a false proxy statement, and *that transaction* was the *direct* cause of the pecuniary injury for which recovery is sought." *Cathcart*, 980 F.2d at 933 (emphasis added). Moreover, the PSLRA provides that in any private action under the Exchange Act (including Section 14), "the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u–4(b)(4); *see also N.Y. City Emps.' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1023 (9th Cir. 2010), *overruled in part on other grounds by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) ("In well-pleaded § 14(a) claims, loss causation connects the proxy misstatements with an actual economic harm.") (citations omitted)).

To effectuate the merger in this case, the Proxy solicited shareholder authorization for three proposals: (i) a reverse stock split, (ii) the issuance of shares to Progress shareholders, and (iii) the adjournment proposal. *See* Compl. ¶¶ 39, 65. The Complaint does not allege any damages to Duke Energy specifically caused by the solicitation of proxies relating to these three items. Rather, Plaintiffs allege that the Director Defendants' decision to replace Johnson—a decision made long after the stockholders approved the merger—is what caused the alleged damages that Duke Energy suffered.[6] Absent allegations connecting the Proxy to the alleged

---

[6] *See id.* ¶ 172 (alleged damages to reputation and credibility, costs incurred from defending against and settling the Securities Class Action); *see also id.* ¶¶ 173-177 (alleged increased regulatory costs); *id.* ¶¶ 178-187 (alleged increased difficulty with regulatory approvals); *id.* ¶¶ 188-193 (alleged impact on credibility and additional costs, including legal fees).

damages, however, the Section 14(a) claim and cannot survive.  *See Cathcart*, 980 F.2d at 933

("the shareholders' votes did not authorize the transaction that caused the losses"); *see also In re*

*NAHC, Inc., Sec. Litig.*, 2001 WL 1241007, at *22 (E.D. Pa. Oct. 17, 2001) (same); *In re*

*VeriSign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1213 (N.D. Cal. 2007) (same).

> **B.      The Complaint Fails to Allege a Section 20(a) Claim.**

According to Plaintiffs, the Director Defendants violated Section 20(a) as a result of their

control over the dissemination of the allegedly false and misleading Proxy.  *See* Compl. ¶¶ 227-

33.  Section 20(a) provides that "[e]very person, who, directly or indirectly, controls any person

liable under any provision of this chapter or of any rule or regulation thereunder shall also be

liable jointly and severally with and to the same extent as such controlled person *to any person to*

*whom such controlled person is liable* . . . unless the controlling person acted in good faith and

did not directly or indirectly induce the act or acts constituting the violation or cause of action."

15 U.S.C. § 78t(a) (emphasis added).

Because the Complaint fails to allege an underlying violation of Section 14 (*see supra*

I.A), there can be no derivative claim under Section 20.  *See In re Digital Island Sec. Litig.*, 357

F.3d 322, 337 (3d Cir. 2004) (dismissing Section 20 claim).  Moreover, and separately, the claim

is barred because Plaintiffs seek to assert it derivatively, on behalf of Duke Energy, the

purportedly "controlled person."  That claim necessarily fails because a controller can be liable

only "to any person to whom such controlled person [*i.e.*, the Company] is liable."  15 U.S.C. §

78t(a); *In re Verisign, Inc.*, 531 F. Supp. 2d at 1213 (dismissing Section 20 claim); *see also*

*Sommers ex rel. FLIR Sys., Inc. v. Lewis*, 641 F. Supp. 2d 1151, 1163 (D. Or. 2009) (same).

Here, Plaintiffs do not claim that the Company is liable to anyone.

### C.      The Complaint Fails to Plead a Contribution Claim Under Section 21(D).[7]

As a preliminary matter, under the PSLRA, the Plaintiffs are statutorily barred from asserting a contribution claim under Section 21D against settling "covered persons," which includes all of the Director Defendants.  *See In re Cendant Corp. Secs. Litig.*, 109 F. Supp. 2d 273, 277-78 (D.N.J. 2000), *aff'd*, 264 F.3d 286 (3d Cir. 2001); 15 U.S.C. § 78u-4(f)(7); 15 U.S.C. § 78u-4(f)(10)(C)(i) (defining "covered person" as any defendant in a private action arising under Chapter 2B).  Indeed, as required under the PSLRA, the Final Judgment entered in the Securities Class Action "bar[ed] all future claims for contribution arising out of the Action . . . by any person against any settling covered person."  Waesco Aff. Ex. F ¶ 15.

But even absent the contribution bar, Plaintiffs' contribution claim cannot survive. Section 21D provides:  "Any covered person against whom a final judgment is entered in a private action shall be liable for damages jointly and severally *only if* the trier of fact specifically determines that such covered person *knowingly committed* a violation of the securities laws."  15 U.S.C. § 78u-4(f)(2)(A) (emphasis added).  To be liable for contribution, the "covered person" must have made "an untrue statement of a material fact, with actual knowledge that the representation is false, or omits to state a fact necessary in order to make the statement made not misleading" or had "actual knowledge of the facts and circumstances that make the conduct of that covered person a violation of the securities laws."  15 U.S.C. § 78u-4(f)(10)(A)(i)-(ii). Under the statute, "[r]eckless conduct by a covered person shall not be construed as a knowing commission of a violation of the securities laws."  *Id.* at § 78u4(f)(10)(C).  Further, to state a Section 21D claim, a plaintiff must allege an underlying Section 10 violation, which requires

---

[7] As Plaintiffs acknowledge, any implied right to contribution under Section 10 of the Exchange Act is now codified in Section 21D.  Compl. ¶¶ 18, 44.  *See also Greebel v. FTP Software, Inc.*, 194 F.3d 185, 200 n.13 (1st Cir. 1999).

pleading with particularity facts that show direct evidence of falsity and scienter.  *See, e.g.*, *Ray v. Citigroup Global Markets, Inc.*, 2004 WL 1794927, at *2-3 (N.D. Ill. Aug. 4, 2004).  Plaintiffs fail to satisfy these requirements.

*First*, the Complaint fails to allege with particularity that the Director Defendants "*knowingly* committed" a Section 10 violation.  15 U.S.C. § 78u-4(f)(2)(A) (emphasis added).  Indeed, Plaintiffs do not even come close to clearing this hurdle.  Rather, they simply incorporate the Securities Class Action allegations (Compl. ¶¶ 127-136) and then conclusorily assert, based on the *settlement* of that case, that "these [Director Defendants] each violated sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5" (Compl. ¶ 240).  But neither the Company nor the Director Defendants admitted liability in that settlement; on the contrary, they denied any liability and the court made no determination otherwise.  Waesco Aff. Ex. F ¶ 11.  Moreover, and in any event, the Complaint alleges no particularized facts supporting the requisite element of ***knowing violations*** by the Director Defendants.[8]  *See In re Verisign*, 531 F. Supp. 2d at 1213 (rejecting conclusory allegations that the directors approved misleading financial statements).

Further, the Securities Class Action complaint, upon which Plaintiffs rely, alleged Exchange Act and Rule 10b-5 claims against only two of the Director Defendants—Rogers and Gray.  *See* Waesco Aff. Ex. J.  No other Director Defendants even were *alleged* to have violated the Exchange Act.[9]  The Complaint contains no allegations regarding Gray's or Rogers'[10] state of

---

[8] *See* Compl. ¶¶ 127-131, 133 (repeating conclusory allegations that statements made "under the ultimate authority of Manly, defendants Rogers and Gray, and the other Duke Director Defendants"); *id.* ¶ 139 (alleging that the Director Defendants "participated in the meetings and communications regarding the ouster of Johnson").

[9] The Complaint adopts the allegations of the *Nieman* Complaint relating to the alleged Section 10 violation but Plaintiffs misleadingly insert references to the "other Duke Director Defendants" to imply that they too were Exchange Act defendants in the *Nieman* action.  *Compare* Waesco Aff. Ex. J ¶¶ 250-95, *with* Compl. ¶¶ 127-71.  The *Nieman* Complaint only alleged purported Exchange Act violations against Rogers and Gray and accused the other Director Defendants of negligence-based Securities Act violations, which cannot be a basis for a 21D claim.

mind. And, any statements attributed to them are either not materially false or misleading (Compl. ¶¶ 134-35 (relating to disclosures that Johnson resigned by "mutual agreement")), or were not made by Gray or Rogers (*id.* ¶¶ 128-31).

**Second**, Plaintiffs nowhere allege an adjudication or concession of liability *against* the Company or the Director Defendants.  Plaintiffs merely point to the ***allegations*** in the Securities Class Action and contend that, "[*a*]*ssuming* that the Company is liable, then these defendants caused the Company to violate the federal securities laws."  Compl. ¶ 241 (emphasis added). That sleight of hand cannot save this legally flawed claim.  Plaintiffs have failed to plead, as they must, that the Company is an adjudicated joint tortfeasor that violated the securities laws, or, alternatively, that the Company has admitted liability.  *See, e.g.*, *Fromer* v. *Yogel*, 50 F. Supp. 2d 227, 235-36 (S.D.N.Y. 1999) (to prevail a plaintiff seeking contribution "must be 'found' liable or concede its liability" (citation omitted)).  In this case, "a judicial finding of [the Company's] liability is precluded as the parties have settled [the Securities Class Action]" without an admission of a securities violation.[11]  *Fromer*, 50 F. Supp. at 235.

This common-sense result should be no surprise.  Plaintiffs, as members of the plaintiff shareholder class in the Securities Class Action, were on notice of the terms of the proposed settlement, including the proposed Final Judgment, which provided that the settlement "shall not, in any event, be construed or deemed . . . a presumption, concession, or admission" by any settling defendants.  *See* Waesco Aff. Ex. F ¶ 11.  Plaintiffs did not object to the proposed judgment before the court that rendered it.  Nor do Plaintiffs challenge the Company's decision to settle without an admission of guilt or the settlement amount the Company would contribute.

---

(. . . continued)

[10]  Rogers was not involved in the executive sessions of the Board and did not participate in the Board vote.  Compl. ¶¶ 9, 73.

[11]  *See* Waesco Aff. Ex K ¶ 14.

*Cf. In re Cendant Corp. Litig.*, 264 F.3d 286, 295 (3d Cir. 2001) (derivative plaintiff objecting to lack of apportionment of liability between company and individuals in settlement of securities class action could, assuming Rule 23.1 is satisfied, pursue breach of fiduciary duty claim contesting propriety of decision to settle). Rather, Plaintiffs now seek to collaterally attack and relitigate the direct securities claims *against* the Company and the Director Defendants, despite the Company's decision to fully settle those direct claims to "eliminate the burden and expense of further litigation and the risk of not prevailing at trial." *See* Waesco Aff. Ex. K ¶ H.

In summary, besides the contribution bar, the Complaint fails to allege with particularity knowing violations of Section 10 or an admission of liability by the Company. Plaintiffs cannot evade these Section 21D requirements by relying on the mere allegations in the Securities Class Action and resultant settlement.[12]

### D.     The Complaint Fails to Plead a Breach of the Fiduciary Duty of Loyalty.

Plaintiffs' pleading burden in claiming that the Director Defendants breached their fiduciary duties under Delaware law is more onerous here because Duke Energy's certificate of incorporation includes a Section 102(b)(7) provision.[13] That provision exculpates the directors from personal liability except where the directors failed to "act[] in good faith and in a manner such person reasonably believed to be in or not opposed to the best interests of the Corporation." 8 *Del. C.* § 102(b)(7); *see also Stone v. Ritter*, 911 A.2d 362, 362 (Del. 2006). Consequently,

---

[12] If this Court dismisses, as it should, the federal securities claims, it should decline to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(2)-(3); *see also Ciro Inc. v. Gold*, 816 F. Supp. 253, 270-71 (D. Del. 1993). Absent the defective federal securities claims, this Court would lack jurisdiction because there is no diversity jurisdiction—upon information and belief, Plaintiff Pinchuck is a resident of Florida (a fact omitted from the Complaint), as are Director Defendants Hance and Forsgren. *See* Compl. ¶¶ 32, 36; *Seinfeld v. O'Connor*, 774 F. Supp. 2d 660, 673 n.12 (D. Del. 2011) (declining supplemental jurisdiction over state law claims after dismissal of federal securities claim).

[13] *See* Amended and Restated Certificate of Incorporation of Duke Energy Corporation, Art. 9, *available at* https://www.duke-energy.com/pdfs/Incorporation-Cert.pdf. The Court may take judicial notice of the Certificate of Incorporation. *See Anspach v. City of Phila.*, 503 F.3d 256, 273 n.11 (3d Cir. 2007).

Plaintiffs must plead facts "stating a non-exculpated breach of fiduciary duty"—*i.e.*, the duty of loyalty—for acting "in bad faith for reasons inimical to the best interests" of Duke Energy stockholders. *In re Lear Corp. S'holder Litig*, 967 A.2d 640, 647-48 (Del. Ch. 2008).

To state a claim for breach of the fiduciary duty of loyalty under Delaware law, "[a] Plaintiff[] must plead facts from which this Court can reasonably infer that either: 'a majority of the Director Defendants either stood on both sides of the [transaction] or were dominated and controlled by someone who did'; or failed to act in good faith, *i.e.*, where a 'fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties.'" *In re NYMEX S'holder Litig.*, 2009 WL 3206051, at *6 (Del. Ch. Sept. 30, 2009) (citations omitted).   Only an "extreme set of facts" can "sustain a disloyalty claim premised on the notion that disinterested directors were intentionally disregarding their duties." *In re BJ's Wholesale Club, Inc. S'holders Litig.*, 2013 WL 396202, at *7 (Del. Ch. Jan. 31, 2013) (internal citation and quotation marks omitted)).   A breach of the duty of loyalty may also exist "where the decision under attack is so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith." *Id.* (citation and quotation marks omitted).   The Complaint fails to satisfy these requirements.

### 1.       Plaintiffs Have Not Alleged A Knowing Violation of the Law.

Plaintiffs assert that the Director Defendants "breached their duty of loyalty and candor by knowingly or recklessly" making false and misleading statements in the Proxy, various press releases and public filings, and to regulatory authorities.  Compl. ¶ 247.  The so-called "false and misleading statements" are said to consist entirely of the Company's pre-merger disclosures that Johnson would be the CEO of the post-merger combined company, and certain general statements regarding the status of the merger.  *See id.* ¶¶ 124, 127-133.  The Complaint is devoid

of any well-pled facts supporting the conclusion that the disclosures were false or misleading when made or that the Director Defendants made any such statements "knowingly or recklessly."

To state a cognizable claim that the Director Defendants failed to cause the Company to make an earlier disclosure about a plan to terminate Johnson, Plaintiffs must plead facts demonstrating not only that such a plan existed pre-closing, but also that "the violation was made knowingly or in bad faith, a showing that requires allegations regarding what the directors knew and when." *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 134 (Del. Ch. 2009) ("A determination of whether the alleged misleading statements or omissions were made with knowledge or in bad faith requires an analysis of the state of mind of the individual director defendants[.]"). "Recklessness," *i.e.*, gross negligence, "is not sufficient to demonstrate the state of mind necessary for finding a breach of the duty of loyalty." *Norfolk Cty. Ret. Sys. v. Jos A. Bank Clothiers, Inc.*, 2009 WL 353746, at *12 n.104 (Del. Ch. Feb. 12, 2009).

Plaintiffs have not pled that any of the Director Defendants knowingly engaged in or approved any fraudulent or illegal conduct. *Citigroup*, 964 A.2d at 134 (plaintiffs failed to allege "specific factual allegations that reasonably suggest sufficient board involvement in the preparation of the disclosures that would allow [this Court] to reasonably conclude that the director defendants face a substantial likelihood of personal liability"). As discussed in Section I.A, *supra*, the Proxy did not contain any false or misleading information. And Plaintiffs merely assert that other public statements must have been false and misleading because the Director Defendants "personally participated in meetings and communications regarding the ouster of Johnson" (Compl. ¶ 139) and that those defendants had "substantially determined following the June 20, 2011 Board meeting, that Johnson should not serve as CEO" (*id.* ¶ 137(a)). That, without more, cannot support a reasonable inference that the Director Defendants knowingly

violated the federal securities laws or that they intentionally acted in bad faith towards the Company or its stockholders. *See Citigroup*, 964 A.2d at 133 (must plead with particularity "which disclosures were misleading, when the Company was obligated to make disclosures, what specifically the Company was obligated to disclose").

The Complaint clearly establishes that the Independent Directors had *discussions* about a change in Company leadership, but that it was not until mid-June 2012 that members of the Board reached even a "preliminary view" on that subject. *See, e.g.*, Compl. ¶ 73; *see also id.* ¶ 95; Waesco Aff. Ex. D at 72:24-74:10 (noting that, through May and June 2012, the Independent Directors discussed their concerns about Johnson and potential options). No facts support Plaintiffs' assertion that the Independent Directors made a final decision to replace Johnson before the merger closed on July 2, 2012.

And Plaintiffs cannot plausibly contend that the Director Defendants had a fiduciary duty to disclose their inchoate thinking or deliberations either to Progress or to Johnson. *See, e.g.*, Compl. ¶¶ 137(d), 247. The Director Defendants' duties ran only to Duke Energy and its stockholders, not to Progress and its stockholders (until they became Duke Energy stockholders). *See, e.g.*, *Badger v. So. Farm Bureau Life Ins. Co.*, 612 F.3d 1334, 1343 (11th Cir. 2010); *Gilbert v. El Paso*, 490 A.2d 1050, 1056 (Del. Ch. 1984) (same). Consistent with these principles and SEC regulations,[14] after the Board voted to remove Johnson, and Johnson agreed to resign, the Company disclosed immediately the change in CEO. *See* Compl. ¶ 108; *see also* Waesco Aff. Ex. D at 46:12-47:17.

---

[14] U.S. Securities and Exchange Commission, Exchange Act Form 8-K, Item 5.02(b), *available at* http://www.sec.gov/about/forms/form8-k.pdf; U.S. Securities and Exchange Commission, Compliance and Disclosure Interpretations: Exchange Act Form 8-K (July 8, 2011), *available at* http://www.sec.gov/divisions/corpfin/guidance/8-kinterp.htm; *see also Andropolis v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d 662, 686 n.10 (D. Colo. 2007) (disclosure two days after termination not untimely).

In short, Plaintiffs do not plead facts supporting their conclusion that the Director Defendants, who were facing a significant decision whether to replace the CEO, intentionally and knowingly caused Duke Energy to violate the law by not disclosing some of the Independent Directors' preliminary views on that subject before the Board took action.[15]

### 2.   The Complaint Does Not State A Claim For Breach of the Duty of Oversight.

Finally, Plaintiffs claim that the Director Defendants violated their fiduciary duty to oversee the accuracy of the Company's public disclosures regarding the replacement of the post-merger CEO.  *See, e.g.*, Compl. ¶ 248.  That claim fails because Plaintiffs have failed to plead not only underlying securities violations but also an independent oversight duty violation.

Claims for breach of the duty of oversight are governed by the standard set forth in *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996), and *Stone v. Ritter*, 911 A.2d 362 (Del. 2006).  In *Stone v. Ritter*, the Delaware Supreme Court held that to plead a *Caremark* claim, a complaint must allege that:

> (a) the directors utterly failed to implement any reporting or information system or controls; *or* (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention.  In either case, imposition of liability requires a showing that *the directors knew that they were not discharging their fiduciary obligations.*

*Ritter,* 911 A.2d at 370 (emphasis added).

The Complaint does not plead a *Caremark* claim.  It does not allege "an utter failure to attempt" to put a monitoring system in place.  Nor does it plead particularized facts demonstrating that the Director Defendants knowingly failed to monitor information or consciously ignored "red flags" of wrongdoing.  *See Guttman v. Huang,* 823 A.2d 492, 507 (Del.

---

[15] Critically, under the merger agreement, the Board did not have the authority to terminate Johnson before the merger closed on July 2, 2012.  *See* Waesco Aff. Ex. A at Annex A, § 1.07(b).

Ch. 2003). Plaintiffs allege that certain Director Defendants that served on specified Board committees were responsible for reviewing public disclosures and regulatory filings but failed in their duty of oversight. *See* Compl. ¶¶ 209-216. Those facts, even if true, do not state a viable *Caremark* claim. *See, e.g.*, *South v. Baker*, 62 A.3d 1, 17 (Del. Ch. 2012).

## II. THE COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFFS FAILED TO PLEAD THAT DEMAND WOULD HAVE BEEN FUTILE.

### A. The Rule 23.1 Pleading Standard.

In addition to and apart from Plaintiffs' failure to state a claim under Rule 12(b)(6), this action must be dismissed under Fed. R. Civ. P. 23.1 because Plaintiffs lack standing to pursue derivative claims. Rule 23.1 requires a stockholder who brings a derivative action to "state with particularity . . . any effort . . . to obtain the desired action from the directors . . . [and] the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1. Although federal law governs the pleading standard, Delaware law governs the underlying substantive requirements governing the adequacy of Plaintiff's derivative claims, including the pre-suit demand requirement. *See Kamen v. Kemper Fin'l Servs., Inc.*, 500 U.S. 90, 95-97 (1991). Under Delaware law, "a cardinal precept . . . is that directors, rather than shareholders, manage the business and affairs of the corporation." *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). "By its very nature the derivative action impinges on the managerial freedom of directors." *Id.* at 811.

Accordingly, a shareholder may substitute his judgment for that of the board and assert claims belonging to the corporation in a derivative action *only after* he "has demanded that the directors pursue the corporate claim and they have wrongfully refused to do so or where demand is excused." *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993). Failure to do either deprives the plaintiff of standing to assert the corporation's claims derivatively.

Where (as here) no demand has been made and the claims relate to a specific board action, a stockholder must plead particularized facts that create a reason to doubt that either "(1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson*, 473 A.2d at 814. Relatedly, where no specific board action is alleged, under *Rales*, "a court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reason to doubt that . . . the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand."[16]  634 A.2d at 934.  Absent such particularized facts, a plaintiff cannot overcome the presumptions of the business judgment rule that "in making a business decision the directors of a corporation acted on an informed basis . . . and in the honest belief that the action taken was in the best interests of the company." *Aronson,* 473 A.2d at 812.

## B.      The *Krieger* Court Conclusively Determined the Issue of Demand Futility.

In the *Krieger* derivative action brought on behalf of Duke Energy, the North Carolina Court entered a final judgment that dismissed a similar derivative suit brought by a Duke Energy shareholder on the ground of failure to demonstrate demand futility.   As a consequence, collateral estoppel bars any further litigation of the demand futility issue under Rule 23.1 and requires dismissal of the Complaint for lack of standing.  *See Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1562 (3d Cir. 1994).

Because *Krieger* was decided by a North Carolina court, the preclusive effect of the decision must be determined under North Carolina law.  *See O'Leary v. Liberty Mut. Ins. Co.*, 923 F.2d 1062, 1064 (3d Cir. 1991).  Under North Carolina law, "the determination of an issue in

---

[16]  In this context, the *Rales* test has been considered the functional equivalent of the second prong of the *Aronson* test.  *See, e.g.*, *Guttman*, 823 A.2d at 501.

a prior judicial . . . proceeding precludes the relitigation of that issue in a later action[.]" *Whitacre P'ship v. Biosignia, Inc.*, 591 S.E.2d 870, 880 (N.C. App. Ct. 2004). "[C]ollateral estoppel only applies if the prior action involved the same parties or those in *privity* with the parties and the same issues." *Cline v. McCullen*, 557 S.E.2d 588, 590 (N.C. App. Ct. 2001). North Carolina law requires an "identity of issues," specifically that: "(1) [t]he issues to be concluded are the same as those involved in the prior action; (2) in the prior action, the issues must have been raised and actually litigated; (3) the issues must have been material and relevant to the disposition of the prior action; and (4) the determination made of those issues in the prior action was necessary and essential to the resulting judgment." *King v. Grindstaff*, 200 S.E.2d 799, 806 (N.C. 1973). The *Krieger* decision meets all these requirements.

*First*, a finding that stockholder Krieger and the stockholder Plaintiffs in this case are in privity is consistent with North Carolina law.[17] *See Brower v. Killens*, 472 S.E.2d 33, 35 (N.C. Ct. App. 1996) (privity exists where parties represent the same legal right); *King*, 284 N.C. at 357 (courts consider the real parties in interest). Plaintiffs here and in *Krieger* seek to enforce the identical corporate right: both bring derivative claims on behalf of Duke Energy, against the same Director Defendants, challenging the same underlying conduct—the Board's decision to remove Johnson as CEO and representations made regarding Johnson.

*Second*, the "issue to be concluded"—demand futility—is identical to the issue presented in *Krieger*. *See Pyott v. La. Mun. Police Emps.' Ret. Sys.*, 74 A.3d 612, 617 (Del. 2013). Both complaints allege that any demand on the Director Defendants would have been futile because

---

[17] Other jurisdictions have also held that derivative plaintiffs stand in privity. *See e.g., Asbestos Workers Local 42 Pension Fund v. Bammann*, 2015 WL 2455469, at *16 (Del. Ch. May 22, 2015).

their conduct in terminating Johnson violated the law and was carried out in bad faith. *Compare* Waesco Aff. Ex. G ¶¶ 58-62, *with* Compl. ¶¶ 199-217.

*Third*, the demand futility issue was actually raised and actually litigated in *Krieger*. *See Williams v. Peabody*, 719 S.E.2d 88, 93 (N.C. Ct. App. 2011) (issue "actually litigated" "if it is properly raised in the pleadings or otherwise submitted for determination and [is] in fact determined.") (internal citation and quotation marks omitted). This issue was extensively briefed in the motion to dismiss in *Krieger* and was the basis on which the North Carolina Court dismissed that case. *See* Waesco Aff. Ex. H at *8; *id.* Ex. L at 13-21; *see also id.* Ex. M at 5-10; *see also id.* Ex. N at 8-20.

*Fourth*, and finally, the issue of demand futility was material and dispositive in *Krieger* and the North Carolina Court's determination was necessary and essential to the judgment. Demand futility was dispositive, because absent demand excusal, stockholders do not have derivative standing to bring claims. *See Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048 (Del. 2004); *see* Waesco Aff. Ex. H at *8; *see also Pyott*, 74 A.3d at 617 (noting that collateral estoppel requirements met where prior decision regarding demand futility was a final judgment and on the merits). And the issue was necessary and essential to the North Carolina Court's determination because that issue was the basis on which the Court dismissed the complaint in *Krieger*. Waesco Aff. Ex. H at *8. Therefore, Plaintiffs claims are collaterally stopped and must be dismissed for lack of standing.

## C. Even If The Issue Is Considered Anew, This Court Should Find That Demand Was Required.

Even if this Court were to consider anew the issue of demand futility, it should dismiss the Complaint for failure to allege demand excusal with particularity. Plaintiffs advance three reasons why demand should be excused: (i) the Director Defendants purportedly acted in bad

faith by violating the securities laws and their duty of disclosure—conduct that "is not a protected business decision" (Compl. ¶ 199), and that results in a substantial likelihood of liability for the Director Defendants (*id.* ¶ 207); (ii) the pled facts give rise to a reasonable doubt that Rogers and the remaining Director Defendants are independent (*id.* ¶¶ 200-06); and (iii) as members of various Board committees, the Director Defendants have failed to act in good faith because of their oversight failures (*id.* ¶¶ 209-216).   Under either *Aronson* or *Rales*, Plaintiffs have failed to satisfy the stringent requirements of Rule 23.1.

> ### 1.   Plaintiffs Fail to Allege Demand Excusal Against the 2015 Board, and Therefore Lack Standing to Assert Their Contribution Claim.

Plaintiff Pinchuck first alleged the Section 21D claim in his original complaint filed in August 2012.   At that point, the contribution claim would have been subject to dismissal as not ripe because the claim did not arise until the Company paid its portion of the settlement.[18]   *See Pall v. KPMG, LLP*, 2006 WL 2800064, at *3 (D. Conn. Sept. 29, 2006) (dismissing derivative contribution claim on ripeness grounds); *In re Cendant Corp. Derivative Litig.*, 96 F. Supp. 2d 394, 397 (D.N.J. 2000) (same); *cf. Sea-Land Serv., Inc. v. United States*, 874 F.2d 169, 171 (3d Cir. 1989) ("[c]ause of action for contribution does not arise until the party seeking contribution has paid[.]").   Thus, Plaintiffs must plead that demand is excused with respect to the Board that was in place in December 2015, after the Company paid its portion of the settlement and when Plaintiffs filed their Amended Complaint, not the Board at the time of the original complaint.[19]   *See Cendant*, 96 F. Supp. 2d at 399 (demand futility determined at time contribution claim

---

[18] *See* D.I. 48 at 4 n.12 (Tansey recognizing that the contribution claim was not ripe).

[19] In December 2015, the Board consisted of 7 Director Defendants (Gray, Browning, DiMicco, Forsgren, Hance, Hyler, and Rhodes), and 9 non-defendant directors (Michael J. Angelakis, Harris E. DeLoach, Jr., Lynn J. Good, John T. Herron, James B. Hyler, Jr., William E. Kennard, E. Marie McKee, Richard A. Meserve, and Carlos A. Saladrigas).

arose).  Because Plaintiffs have failed to plead demand was excused with respect to the December 2015 Board, their contribution claim should be dismissed on that basis alone.

### 2. Plaintiffs Have Failed to Plead With Particularity Facts Sufficient to Overcome the Presumption of the Business Judgment Rule.

Plaintiffs contend that demand is excused because the Director Defendants "failed to disseminate a materially accurate Proxy," "further participated in a violation of Section 10(b) of the Exchange Act," and breached their fiduciary duties by approving such bad faith disclosures. Compl. ¶ 199; *see also* ¶ 208.  Plaintiffs assert that the Director Defendants' conduct "can in no way be considered a valid exercise of business judgment," and therefore subjecting the Director Defendants to a substantial likelihood of liability.  *See id.*

Plaintiffs may not "bootstrap allegations of futility merely by pleading that "the directors participated in the challenged transaction or that they would be reluctant to sue themselves." *Blasband v. Rales*, 971 F.2d 1034, 1049 (3rd Cir. 1992).  Moreover, because Plaintiffs have failed to allege a cognizable legal claim against the Director Defendants, they "cannot use those causes of action as a basis for alleging demand futility." *In re Verisign*, 531 F. Supp. at 1192; *cf. La. Mun. Police Emps. Ret. Sys. v. Blankfein*, 2009 WL 2191243, at *1-2 (S.D.N.Y. July 20, 2009) (rejecting argument that conduct alleged in separate complaint that gave rise to a settlement satisfied the plaintiffs' burden of pleading with particularity demand refusal). Importantly, "demand will be excused . . . only in the rare case when a plaintiff is able to show director conduct that is 'so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists.'" *Citigroup*, 964 A.2d at 121 (citing *Aronson*, 473 A.2d at 815).

As discussed in Section I.D, *supra*, Duke Energy's Section 102(b)(7) provision exculpates the Director Defendants from personal liability for violations of fiduciary duty except

for breaches of the duty of loyalty.  "Thus, to show a substantial likelihood of liability that would excuse demand, plaintiffs must plead particularized factual allegations that 'support the inference that the disclosure violation was made in bad faith, knowingly or intentionally.'"  *Citigroup*, 964 A.2d at 132 (citation omitted); *see also Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008) (requiring particularized facts "that a majority of the defendants knowingly engaged in 'fraudulent' or 'illegal' conduct or breached" their fiduciary duties in bad faith).  Here, as in *Krieger*, the Complaint's factual allegations are insufficient to support a conclusion that a majority of the Director Defendants face a substantial likelihood of liability that would prevent them from impartially considering a demand.

As discussed in Sections I.A-B, *supra*, the Complaint is devoid of well-pled allegations that the Director Defendants violated Section 14(a) or 20(a) of the Exchange Act or otherwise breached their fiduciary duties.  *See, e.g.*, *Canty v. Day*, 13 F. Supp. 3d 333, 348-49 (S.D.N.Y. 2014) (dismissing for failure to plead demand futility Section 14(a) and *Caremark* claims).  And besides the contribution bar, the Complaint does not allege a well-pled contribution claim under Section 21D of the Exchange Act.  *See* Section I.C, *supra*.  Plaintiffs predicate their entire "contribution" claim on their adoption of the Securities Class Action allegations (*see* Compl. ¶¶ 127-136), but plaintiffs in that action alleged Exchange Act claims against only two of the eleven Director Defendants here—Rogers and Gray.  Waesco. Aff. Ex. J ¶¶ 52-58.  No Exchange Act claims were alleged against a majority of the Director Defendants.

It is established that Plaintiffs' conclusory allegations that the Director Defendants "acted in bad faith, immorally and illegally," cannot, without particularized supporting facts, support a

reasonable inference that a majority of the Board faces a significant likelihood of liability.[20]  *See* Compl. ¶ 217; *see also Higher Educ. Mgmt. Grp., Inc. v. Matthews*, 2014 WL 5573325, at *8 (Del. Ch. Nov. 3, 2014) (generalized group pleading was insufficient to establish demand futility)).  Indeed, the Complaint has not adequately pled any specific false or misleading statements as a basis for asserting the Director Defendants acted illegally.  *See* Section I, *supra*.

### 3.      Plaintiffs Have Not Pled Facts Establishing A Reason to Doubt the Board's Independence.

Plaintiffs assert that because Rogers and his fellow Board members allegedly sought to retain Rogers' position as CEO after the merger, Rogers and the Board lack independence to "fairly assess a demand given their wrongful conduct."  Compl. ¶¶ 201-203.  This theory ignores the Complaint's allegations that Rogers did not participate in the executive sessions regarding potential termination of Johnson, and that he had not been informed until June 23, 2012 of the Independent Directors' preliminary views about Johnson.  Compl. ¶ 9, 73.  Further, the Complaint does not plead that Rogers exercised undue influence over the Independent Directors. *See, e.g.*, *Rales*, 634 A.2d at 936 (plaintiffs must show that the other directors are "so under the influence that their discretion would be sterilized").  Equally insufficient are the Complaint's conclusory allegations that Rogers engineered his return by "ke[eping] Johnson away from the Duke Board" and allowing problems to "fester."  *Id.* ¶ 202.  None of Plaintiffs' allegations, separately or in the aggregate, demonstrate that the Board was not independent.

---

[20] *See, e.g.,* Compl. ¶ 212 ("Defendants Browning, DiMicco, and Gray consciously disregarded their oversight duties as members of the Corporate Governance Committee, when they negotiated and approved the Merger Agreement"); *id.* ¶ 245 (certain defendants "completely and utterly failed in their duty of oversight and failed in their duty to supervise the Company's compliance with legal and regulatory requirements"); *id.* ¶ 210 (defendants "are responsible for knowingly or recklessly allowing the false misleading statements").

### 4.    Plaintiffs Have Failed to Plead A Reason to Doubt the Director Defendants Satisfied Their Oversight Duties.

Plaintiffs also assert that certain defendants "completely and utterly failed in their duty of oversight and failed to supervise the Company's compliance with legal and regulatory requirements" and otherwise "disregarded their oversight duties."    Compl. ¶¶ 209-216. *Caremark* claims such as these have "been recognized as 'possibly the most difficult theory in corporation law on which a plaintiff might hope to win a judgment.'"    *In re GM Co. Derivative Litig.*, 2015 WL 3958724, *14 (Del. Ch. June 26, 2015), *aff'd* --- A.3d ---, 2016 WL 552651 (Del.).   Here, Plaintiffs have not pled *any* particularized facts focusing on the specifics of the Director Defendants' oversight or lack thereof.   Instead, they rely on alleged non-compliance with committee charters as the basis for their conclusory allegations that the Independent Defendants "knowingly and recklessly" or "utterly" failed in their oversight duties.   *See, e.g.*, Compl. ¶¶ 211-12.   But Delaware courts routinely reject reliance on committee membership as a basis for pleading demand futility.   *See Baker*, 62 A.3d at 17.   Rather, any failure of oversight claim must focus on what the directors specifically did or failed to do, which Plaintiffs have not done here.   Just as the *Krieger* Court found, "there is a dearth of well pled facts from which [the Court] can reasonably infer that the board was *consciously* acting in a manner inimical to [Duke Energy] or was advancing instead some other interest, or was otherwise violating its duty of loyalty by acting in bad faith."   *In re GM*, 2015 WL 3958724, at *17.

### CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice and without leave to amend for failure to state a claim, pursuant to Rule 12(b)(6), and for failure to adequately plead demand futility pursuant to Rule 23.1.   Should the Court dismiss the federal securities claims, it should decline supplemental jurisdiction over the remaining state law claim.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Susan W. Waesco*
Kenneth J. Nachbar (#2067)
Susan W. Waesco (#4476)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
knachbar@mnat.com
swaesco@mnat.com
(302) 658-9200

*Attorneys for Defendants James E. Rogers,*
*Michael G. Browning, G. Alex Bernhardt, Sr.,*
*Ann Maynard Gray, James T. Rhodes, James H.*
*Hance, Jr., William Barnet III, Philip R. Sharp,*
*Daniel R. DiMicco, John H. Forsgren and E.*
*James Reinsch, and Nominal Defendant Duke*
*Energy Corporation*

OF COUNSEL:
Jack B. Jacobs (#000008)
SIDLEY AUSTIN LLP
1201 North Market Street
Suite 1402
Wilmington, DE 19801
(302) 654-1805

Steven M. Bierman
Andrew W. Stern
Jackie A. Lu
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019

February 19, 2016