IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EDWARD TANSEY and WARREN PINCHUCK, suing derivatively on behalf of DUKE ENERGY CORPORATION, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 12-cv-1049-RGA |
| JAMES E. ROGERS; MICHAEL G. BROWNING; G. ALEX BERNHARDT, SR.; ANN MAYNARD GRAY; JAMES T. RHODES; JAMES H. HANCE, JR; WILLIAM BARNET, III; PHILIP R. SHARP; DANIEL R. DIMICCO; JOHN H. FORSGREN; and E. JAMES REINSCH, | ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| DUKE ENERGY CORPORATION, | ) ) | |
| Nominal Defendant. | ) | |

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF
THEIR MOTION TO DISMISS THE VERIFIED
<u>CONSOLIDATED AMENDED SHAREHOLDERS' DERIVATIVE COMPLAINT</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Kenneth J. Nachbar (#2067)
Susan W. Waesco (#4476)
Alexandra M. Cumings (#6146)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
knachbar@mnat.com
swaesco@mnat.com
acumings@mnat.com
*Attorneys for Defendants James E. Rogers,*
*Michael G. Browning, G. Alex Bernhardt, Sr.,*
*Ann Maynard Gray, James T. Rhodes, James H.*
*Hance, Jr., William Barnet III, Philip R. Sharp,*
*Daniel R. DiMicco, John H. Forsgren and E.*
*James Reinsch, and Nominal Defendant Duke*
*Energy Corporation*

OF COUNSEL:

Jack B. Jacobs (#000008)
SIDLEY AUSTIN LLP
1201 North Market Street
Suite 1402
Wilmington, DE 19801
(302) 654-1805

Steven M. Bierman
Andrew W. Stern
Jackie A. Lu
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019

April 15, 2016

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

    I.      A PRE-SUIT DEMAND WAS REQUIRED. ........................................................ 2

           A.     Demand Was Required Because Plaintiffs Have Not Alleged That A Majority Of Directors Face A Substantial Likelihood Of Liability. ............................................................................. 2

           B.     Demand Was Required Because Plaintiffs Have Not Alleged With Particularity That The Board Acted In Bad Faith. ............................................................................................................. 5

           C.     Demand On The 2015 Board Relating To The Contribution Claim Was Required. ....................................................................... 6

           D.     Plaintiffs Are Collaterally Estopped From Relitigating Demand Futility By The Decision In Krieger. .............................. 6

    II.     PLAINTIFFS ALSO FAIL TO STATE A CLAIM FOR RELIEF. ...................... 8

           A.     Plaintiffs Fail To Allege A Section 14(a) Claim. ........................ 8

                1.     The Proxy Statement Was Not Materially Misleading. ................................................................................ 8

                2.     Plaintiffs Failed To Plead Transaction Causation. ......................... 10

           B.     The Section 21D Claim Must Be Dismissed. ............................. 12

                1.     The Contribution Claim Is Statutorily Barred. .............................. 12

                2.     Plaintiffs Have Not Alleged A Section 21D Claim. ...................... 13

           C.     Plaintiffs Have Not Alleged A Breach Of Fiduciary Duty Claim. ........................................................................................... 14

CONCLUSION .......................................................................................................................... 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abrams v. Wainscott*,
    2013 WL 6021953 (D. Del. Nov. 13, 2013) ..............................................................................7

*In re Am. Int'l Grp., Inc., Consol. Derivative Litig.*,
    976 A.2d 872 (Del. Ch. 2009).................................................................................................3

*Basic, Inc. v. Levinson*,
    485 U.S. 224 (1988)..............................................................................................................10

*Canty v. Day*,
    13 F. Supp. 3d 333, 348 (S.D.N.Y. 2014) ............................................................................8

*In re Capital One Derivative S'holder Litig.*,
    952 F. Supp. 2d 770 (E.D. Va. 2013) ..............................................................................3, 15

*In re Cendant Corp. Secs. Litig.*
    109 F. Supp. 2d 273 (D.N.J. 2001), *aff'd* 264 F.3d 286 (3d Cir. 2001)............................12, 13

*In re Cendant Corp. Secs. Litig.*,
    139 F. Supp. 2d 585 (D.N.J. 2001) .....................................................................................12

*Chen v. Howard-Anderson*,
    87 A.3d 648 (Del. Ch. 2014).................................................................................................5

*In re China Agritech, Inc. S'holder Derivative Litig.*,
    2013 WL 2181514 (Del. Ch. May 21, 2013)........................................................................3

*City of Moses Lake v. United States*,
    472 F. Supp. 2d 1220 (E.D. Wash. 2007) .............................................................................6

*Donaldson v. Ducote*,
    373 F.3d 622 (5th Cir. 2004) .................................................................................................4

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*,
    594 F.3d 783 (11th Cir. 2010) .............................................................................................11

*In re Exxon Mobil Corp. Sec. Litig.*,
    500 F.3d 189 (3d Cir. 2007).................................................................................................10

*In re EZCORP Inc. Consulting Agreement Derivative Litigation*,
    130 A.3d 934 (Del. Ch. 2016)...............................................................................................8

*Fromer v. Yogel*,
    50 F. Supp. 2d 227 (S.D.N.Y. 1999)....................................................................13

*In re G-I Holdings, Inc.*,
    2006 WL 1751793 (D.N.J. June 21, 2006) ...........................................................6

*Gannon v. Cont'l Ins. Co.*,
    920 F. Supp. 566 (D.N.J. 1996) ...........................................................................11

*General Elec. Co. v. Cathcart*,
    980 F.2d 927 (3d Cir. 1992)..................................................................................11

*In re Goldman Sachs Grp., Inc. S'holder Litig.*,
    2011 WL 4826104 (Del. Ch. Oct. 12, 2011) ........................................................3

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
    725 F. Supp. 712 (S.D.N.Y. 1989) ......................................................................10

*Guttman v. Huang*,
    823 A.2d 492 (Del. Ch. 2003)................................................................................5

*Hampshire Grp., Ltd. v. Kuttner*,
    2010 WL 2739995 (Del. Ch. July 12, 2010)..........................................................3

*In Reliance Sec. Litig.*,
    135 F. Supp. 2d 480 (D. Del. 2001) .......................................................................5

*J. I. Case Co. v. Borak*,
    377 U.S. 426 (1964).............................................................................................11

*Langer v. Monarch Life Ins. Co.*,
    966 F.2d 786 (3d Cir. 1992)...................................................................................6

*Malone v. Brincat*,
    722 A.2d 5 (Del. 1998) ..........................................................................................5

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970).............................................................................................11

*N.Y. Emps.' Ret. Sys. v. Jobs*,
    593 F.3d 1018 (9th Cir. 2010) .............................................................................11

*Pall v. KPMG*,
    2006 WL 2800064 (D. Conn. Sept. 26, 2006).....................................................12

*Pyott v. Louisiana Municipal Police Emps.' Ret. Sys.*,
    74 A.3d 612 (Del. 2013) .........................................................................................8

*Ray v. Citigroup Global Markets, Inc.*,
2004 WL 1794927 (N.D. Ill. Aug. 4, 2004) ........................................................13

*SEPTA v. Orrstown Fin. Servs., Inc.*,
2015 WL 3833849 (M.D. Pa. Jun. 22, 2015).........................................................9

*Shapiro v. UJB Fin. Corp.*,
964 F.2d 272 (3d Cir. 1992)................................................................................10

*Siers v. Morrash*,
700 F.2d 113 (3d Cir. 1983)..................................................................................4

*State By New Bern Child Support Agency v. Lewis*,
303 S.E.2d 627 (N.C. Ct. App. 1983) ...................................................................7

*In re Tyco Int'l Ltd.*,
2004 WL 524429 (D.N.H. Mar. 16, 2004) .............................................................6

*In re VeriSign Derivative Litig.*,
531 F. Supp. 2d 1173 (N.D. Cal. 2007) ...............................................................11

*In re Walt Disney Co. Derivative Litig.*,
906 A.2d 27 (Del. 2006) ........................................................................................3

*Wilson v. Great Am. Indus., Inc.*,
855 F.2d 987 (2d Cir. 1988)..................................................................................9

*Wood v. Baum*,
953 A.2d 136 (Del. 2008) ....................................................................................15

*Zirn v. VLI Corp.*,
681 A.2d 1050 (Del. 1996) ....................................................................................5

**Other Authorities**

H.R. REP. NO. 104-369 (1995)...........................................................................12

**Rules and Statutes**

15 U.S.C. 78u-4(f)(2)(A) .............................................................................12, 14

15 U.S.C. § 78u-4(f)(7)(A) .................................................................................12

INTRODUCTION[1]

Plaintiffs seek to prosecute, on behalf of the Company, derivative claims arising from the 2012 merger of Duke Energy and Progress Energy (the "Merger") and, in particular, the 2015 settlement of putative class action claims relating to that Merger.  The Answering Brief confirms that the Complaint does not come close to alleging facts necessary to enable these shareholder plaintiffs, who did not make a demand upon Duke Energy's Board, to move forward with derivative claims.  Indeed, Plaintiffs fail to satisfy even the relatively more lenient Rule 12(b)(6) standard by which the Complaint would be judged if they had standing to proceed.  For these reasons, the Court should dismiss the Complaint.

To demonstrate demand futility, Plaintiffs must do more than copy the allegations of the Securities Class Action complaint and cite to a Magistrate's Memorandum & Recommendation ("Recommendation") that recommended denial of Defendants' motion to dismiss that complaint. As discussed in the Opening Brief and explained below, Plaintiffs must allege with particularity that a majority of the Director Defendants face a substantial likelihood of liability or acted in bad faith.  In an effort to meet that burden, Plaintiffs rely almost entirely on the Magistrate's Recommendation, which was never adopted by the North Carolina District Court and which applied a much more lenient standard of review to the direct claims that were at issue in that case.  Here, this Court must assess whether this Complaint contains sufficient particularized allegations implicating a majority of the 15-member Board in wrongdoing that exposes them to a substantial threat of personal liability.  At most, the Complaint suggests that some subset of

---

[1]   If not defined herein, capitalized terms are defined in Defendants' Opening Brief in Support of Their Motion to Dismiss ("Opening Brief" or "OB"), D.I. 84.  "Answering Brief" or "AB" refers to Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss, D.I. 92.

directors harbored doubts about whether Johnson should remain CEO after the Merger.  That is not enough to excuse demand under Delaware law.

Even if Plaintiffs could demonstrate demand futility, the Complaint fails to state a claim. First, Plaintiffs' Section 14(a) claim sounds in fraud, but their Complaint does not allege with sufficient particularity material misrepresentations or omissions in the Proxy Statement.  Nor does the Complaint allege—as it must—that the alleged proxy fraud caused damages.  Although the Proxy Statement solicited votes to enable the Merger, Plaintiffs do not claim that the Merger caused Duke Energy's alleged damages.

Second, Plaintiffs are statutorily barred from asserting a Section 21D contribution claim. Under the PSLRA, the Final Judgment, which approved the settlement of the Securities Class Action, expressly bars contribution claims against the Director Defendants.  Because Plaintiffs' arguments focus on the scope of the release in the settlement, rather than the contribution bar, they entirely miss the point, which is that the contribution claims Plaintiffs seek to pursue are barred as a matter of law (regardless of the scope of the release).

Third, Plaintiffs have not alleged a claim for breach of the duty of loyalty under Delaware law because, even had there been a disclosure violation, there are no well pled facts that the Director Defendants knowingly caused the Company to act illegally.  Once again, merely pointing to the non-binding Recommendation in the Securities Class Action as proof of a securities violation by the Director Defendants is not enough.

ARGUMENT

I.    A PRE-SUIT DEMAND WAS REQUIRED.

      A.    Demand Was Required Because Plaintiffs Have Not Alleged That A Majority Of Directors Face A Substantial Likelihood Of Liability.

Having conceded the Director Defendants' independence, Plaintiffs nonetheless assert that demand is excused because the Director Defendants face a substantial likelihood of liability

for issuing a misleading proxy statement and for knowingly causing Duke Energy to violate federal securities laws.  (AB at 23-25.)  But, to excuse demand, Plaintiffs must demonstrate through particularized factual allegations "not just that the directors face some risk of liability, but that their actions were so egregious that 'a substantial likelihood of director liability' exists." *In re Capital One Derivative S'holder Litig.*, 952 F. Supp. 2d 770, 791 (E.D. Va. 2013) (applying Delaware law) (citation omitted).  Here, Plaintiffs have not even stated a claim, let alone carried the significantly higher burden of pleading facts that demonstrate a substantial likelihood of liability.[2]  *See In re Goldman Sachs Grp., Inc. S'holder Litig.*, 2011 WL 4826104, at *18 (Del. Ch. Oct. 12, 2011) ("A simple allegation of potential directorial liability is insufficient to excuse demand, else the demand requirement itself would be rendered toothless . . . .").

In their Opening Brief, Defendants underscored Plaintiffs' failure to allege that any, much less a majority, of the Director Defendants *knowingly* violated the securities laws or acted in bad faith.  (OB at 19-20.)  Rather than respond to this point, Plaintiffs attack a strawman by asserting that "whether any individual Defendant made [an actionable] 'statement' is irrelevant," and that the Director Defendants collectively violated their "duty to disclose."  (AB at 25 n.6.) But Plaintiffs' pleading burden is clear:  Plaintiffs must plead that a *majority* of the Board were incapable of considering a demand relating to the claimed federal securities law violations and state law claim for breach of fiduciary duty of loyalty.  In particular, "a derivative complaint

---

[2]  Plaintiffs' authorities are distinguishable.  *See In re Am. Int'l Grp., Inc., Consol. Derivative Litig.*, 976 A.2d 872 (Del. Ch. 2009) (directors liable for complicit illegal activity because officers were aware of and encouraged activity); *Hampshire Grp., Ltd. v. Kuttner*, 2010 WL 2739995 (Del. Ch. July 12, 2010) (director consciously caused corporation to violate the law after learning of illegal practice); *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27 (Del. 2006) (no finding of bad faith because there was no showing of harmful intent or intentional dereliction of duty despite allegations more egregious than those here, including termination of the President without a board vote); *In re China Agritech, Inc. S'holder Derivative Litig.*, 2013 WL 2181514 (Del. Ch. May 21, 2013) (members of audit committee failed to act in good faith when they consciously disregarded their oversight duties).

must plead facts *specific to each director*, demonstrating that at least half of them could not have exercised disinterested business judgment in responding to a demand." *Desimone v. Barrows*, 924 A.2d 908, 934 (Del. 2007). The Complaint falls far short of satisfying this requirement. (OB at 26-29.)

Plaintiffs rely heavily on Magistrate Judge Cayer's Recommendation to deny the motion to dismiss in the Securities Class Action, as support for their argument that the Director Defendants face a substantial likelihood of liability. (See AB at 3-4.) This reliance is misplaced. First, the Recommendation, which was never adopted, was neither precedential nor legally binding even in that case. *See*, *e.g*., *Siers v. Morrash*, 700 F.2d 113, 115 (3d Cir. 1983) (magistrate judge's recommendation is not a final decision); *Donaldson v. Ducote*, 373 F.3d 622, 624 (5th Cir. 2004) (magistrate's recommendation is not final and "does not in any way 'dispose of' a party's claims") (citation omitted). Second, the claims presented, and the standard of review applied, in the Securities Class Action were quite different from those involved here. The Securities Class Action plaintiffs asserted no claims for violations of Sections 14(a), 20(a) and 21D of the Exchange Act or state law claims for breach of fiduciary duty. Moreover, the Section 10/Rule 10b-5 claim in the Securities Class Action was asserted against only two of the Director Defendants named here. Third, as explained further in Section II.A.1, infra, Magistrate Judge Cayer applied a more lenient Rule 8 pleading standard (rather than the more stringent standard under Rule 9(b)) to the Securities Class Action claims, which alleged misrepresentations and omissions in the registration statement that was distributed before the shareholder vote in August 2011. Thus, Plaintiffs' conclusory assertion that the Magistrate's Recommendation supports an allegation of "obvious violations of law committed by Defendants" (AB at 5) cannot establish a

substantial likelihood of liability.[3]   Critically, Plaintiffs have failed to plead with particularity that at least eight Board members, *i.e.*, a majority of the Board, had made the determination to remove Johnson at the time of the alleged disclosure violations, such that they could be held personally liable for damages for knowingly disseminating false disclosures.   Indeed, the allegations in the Complaint are to the contrary.   (*See* Compl. ¶¶ 73-74.)   Absent such allegations, demand is not excused.  *See Guttman v. Huang*, 823 A.2d 492, 501-502 (Del. Ch. 2003); OB 4-5, 11-12, 15-16,19-20, 26-29.

> **B.**   **Demand Was Required Because Plaintiffs Have Not Alleged With Particularity That The Board Acted In Bad Faith.**

Plaintiffs' assertion that demand is futile because the Director Defendants failed to act in good faith by "approving disclosures that 'misleadingly []emphasized . . . and mischaracterized' the intended management structure of the post-merger Company" is likewise without merit  (AB at 26.)   The Proxy Statement was signed by the Director Defendants in 2011—nearly one year before the transaction closed and before the Board voted to terminate Johnson.   Except for citing the Proxy Statement, the Complaint contains no particularized allegations relating to the Director Defendants' involvement with *any* disclosures.  (OB at 15-16, 27-30.)   Nor do Plaintiffs' Section 14 allegations come close to pleading directorial bad faith.[4]   At most, the Complaint identifies just four directors (Barnet, DiMicco, Gray, and Rogers) who had "reservations" as to Johnson's

---

[3]    Several of Plaintiffs' own cited authorities compel dismissal.  *See In Reliance Sec. Litig.*, 135 F. Supp. 2d 480, 519-20 (D. Del. 2001) (no facts alleged to support knowing failure to disclose); *Malone v. Brincat*, 722 A.2d 5 (Del. 1998) (only *knowing* dissemination of materially false information may result in finding of breach of fiduciary duty); *Zirn v. VLI Corp.*, 681 A.2d 1050, 1061 (Del. 1996) (directors not liable for partial failure to disclose material information as any misstatements implicated the duty of care rather than the duty of loyalty).  And Plaintiffs' other authorities are distinguishable.  *See Chen v. Howard-Anderson*, 87 A.3d 648, 692-93 (Del. Ch. 2014) (record revealed the directors knew about the disclosure problems before approving the proxy statement).

[4]    Notably, although the Section 14 allegations sound in fraud and thus are subject to the heightened pleadings requirements of Rule 9 and the PSLRA, Plaintiffs assert that those allegations are premised on the Director Defendants' *negligence* (AB at 12), not on any purported intentional misconduct.  This is fatal to Plaintiffs' claim of bad faith.

abilities before the Proxy Statement was issued in July 2011.  (Compl. ¶ 122.)  This is a far cry

from an allegation that a majority of the Board had determined to remove Johnson prior to July

2011, and thus "knowingly" disseminated a false proxy statement.[5]

        C.        **Demand On The 2015 Board Relating To The Contribution Claim Was Required.**

Plaintiffs do not seriously contest that the contribution claim was unripe when it was first

asserted in 2012.  At that time, Duke Energy had not paid anything to anyone.  Plaintiffs argue,

nonetheless, that the Company was "entitled to assert a hypothetical contribution claim[]" in

2012.  (AB at 20.)  But Plaintiffs' cited authorities are inapposite[6] and a demand should have

been made on the Board that was in place when the claim ripened—in 2015.  (*See* OB at 26-27;

AB at 21 ("[T]here are cases going both ways on the issue of ripeness . . . .").)  Plaintiffs have

not alleged (and cannot allege) that a demand on that Board would have been futile.

        D.        **Plaintiffs Are Collaterally Estopped From Relitigating Demand Futility By The Decision In *Krieger*.**

Plaintiffs argue that because the *Krieger* action (litigated in the North Carolina Superior

Court) involved only the amount of severance paid to Johnson, *Krieger* does not bar further

litigation of demand futility.  (*See* AB at 26.)  That is incorrect.  In *Krieger* as here, the demand

futility issue centered on the same alleged underlying conduct—the Independent Directors'

---

[5]    Plaintiffs' assertion that Defendants have cherry-picked excerpts of testimony is incorrect. (AB at 26.)  The Complaint incorporates the testimony of Ms. Gray and Messrs. Rogers, Browning, and Johnson, and the Court may consider this testimony in its entirety.  (*See* OB at 5 n.3.)  Given the length of the transcripts, Defendants submitted excerpts of the relevant testimony, but can provide full transcripts if the Court prefers.

[6]    *Langer v. Monarch Life Ins. Co.*, 966 F.2d 786 (3d Cir. 1992), did not address the ripeness of a contribution claim for purposes of demand futility.  The *Langer* court held that, under the Federal Rules allowing for alternative claims or defenses, a third-party plaintiff could assert hypothetical claims of indemnity and subrogation against an insurer while also litigating the underlying claim.  *Id.* at 802.  *See also City of Moses Lake v. United States*, 472 F. Supp. 2d 1220, 1230 (E.D. Wash. 2007) (under the federal statute at issue, contribution claims could be brought pending underlying litigation); *In re G-I Holdings, Inc.*, 2006 WL 1751793, at *9 (D.N.J. June 21, 2006) (no discussion of ripeness of contribution claim in context of demand futility analysis); *In re Tyco Int'l Ltd.*, 2004 WL 524429, at *4 (D.N.H. Mar. 16, 2004) (same).

purported bad faith in terminating Johnson and causing the Company to act illegally by failing to disclose the termination. (*Compare* Waesco Aff. Ex. G at ¶¶ 42, 60-62, *with* Compl. ¶¶ 197-199, 207-208.) That the claims in *Krieger* were not identical to the claims asserted here is immaterial, because what matters is what *issues* were actually litigated. *See State By New Bern Child Support Agency v. Lewis*, 303 S.E.2d 627, 630 (N.C. Ct. App. 1983) ("The key question always concerns the issue(s) *actually litigated and decided* in the original action. Consequently, collateral estoppel may be raised in a subsequent action even though that action involved a claim for relief or cause of action different from the first.") (emphasis in original)).

In both this case and *Krieger*, the plaintiffs argued that the Director Defendants could not properly consider a demand because they acted in bad faith and illegally in connection with Johnson's termination.[7] (*See* OB at 24-25; Compl. ¶¶ 207, 217; Waseco Aff. Ex. L at 13-21; *see also id*. Ex. M at 3-10; *see also id*. Ex. N at 8-20.) In *Krieger*, the parties briefed the demand futility issue and the North Carolina court dismissed on that ground, holding that demand was not excused. (Waesco Aff. Ex. H at *8.) Therefore, the issue of demand futility as it relates to the Independent Directors is foreclosed from further litigation.[8] (*See* OB at 23-25.)

---

[7]    In his opposition to the defendants' motion to dismiss, Krieger argued, "[b]ecause the deceit practiced by the Director Defendants constituted bad faith and led the Company to act illegally, the Director Defendants are precluded from avoiding liability . . . . Indeed, the Director Defendants' actions clearly resulted in the Company acting illegally since Duke is now the subject of an investigation by the NCUC . . . ." (Waesco Aff. Ex. N at 14.)

[8]    Under *Abrams v. Wainscott*, 2013 WL 6021953, at *3 (D. Del. Nov. 13, 2013), the demand futility analysis is conducted "transaction-by-transaction," not "issue by issue." (AB at 27.) Here, as in *Krieger*, the "transaction" is the Director Defendants' decision to replace Johnson, which both Plaintiffs and the *Krieger* plaintiff allege was made in bad faith.

7

*Krieger*'s preclusive effect is determined under North Carolina law.[9]   In *Pyott v. Louisiana Municipal Police Employee's Retirement System*, 74 A.3d 612, 615 (Del. 2013), the Delaware Supreme Court held that Delaware courts must "give a judgment [from another jurisdiction] the same force and effect that it would be given by the rendering court," and that the preclusive effect of such a judgment must be determined by the law of that jurisdiction. Stockholder Krieger is in privity with the stockholder Plaintiffs in this case because, consistent with North Carolina law, the plaintiffs in both cases sought to enforce the identical corporate right by bringing derivative claims arising out of the same alleged wrongdoing against the same director defendants.  (*See* OB at 24.)  Under *Pyott*, demand futility may not be relitigated here.

II.   PLAINTIFFS ALSO FAIL TO STATE A CLAIM FOR RELIEF.[10]

    A.   Plaintiffs Fail To Allege A Section 14(a) Claim.

        1.   The Proxy Statement Was Not Materially Misleading.

Defendants demonstrated in their Opening Brief (*see* OB at 10-13) that Plaintiffs have not alleged facts sufficient to infer that the Proxy Statement was materially misleading at the time it was issued in July 2011.  A mere accusation that some directors entertained some unspecified doubt as to Johnson's ability to lead the merged company (*see* AB at 12-13), without more, cannot support a Section 14 claim.  *See Canty v. Day*, 13 F. Supp. 3d 333, 348 (S.D.N.Y. 2014) (dismissing Section 14 claim in part because the "failure to disclose unspecified 'internal turmoil'" in the proxy did not constitute an actionable omission).  Glaringly absent from the Complaint are *any* facts supporting Plaintiffs' conclusory assertion that as of July 2011,

---

[9]   Plaintiffs' reliance on *In re EZCORP Inc. Consulting Agreement Derivative Litigation*, 130 A.3d 934 (Del. Ch. 2016), is therefore misplaced.  In *EZCORP*, the Court considered the preclusive effect of a Rule 23.1 dismissal on stockholders other than the named plaintiff under principles of Delaware—not North Carolina—law.

[10]   Plaintiffs make no attempt to refute, and therefore concede, that they failed to adequately plead a claim under Section 20(a).  (*See* OB at 13.)

"Defendants had already determined that Johnson would be appointed and then immediately removed as head of the merged company" (AB at 5). To the contrary, what the Complaint alleges is that in May and June 2012—long after the August 2011 shareholder vote approving the Merger—the Independent Directors were discussing their concerns relating to Johnson and their options for addressing those concerns. (*See* Compl. ¶ 73; OB at 11-12.)

Magistrate Judge Cayer's Recommendation regarding *other* unrelated securities claims cannot cure the defects in this Complaint.[11] (*See* AB. at 13.) As discussed above in Section I.A, a report and recommendation of a magistrate judge is not a judicial determination that can collaterally estop the Court from considering the allegations of a complaint in a different action. Moreover, even if the Recommendation were precedential, it is inapplicable because the Magistrate there applied a liberal Rule 8 pleading standard to Securities Act claims. *See Nieman v. Duke Energy Corp.*, 2013 WL 4004274, at *5 (W.D.N.C. July 26, 2013). Here, in contrast, the Complaint clearly sounds in fraud, as is made clear from Plaintiffs' repeated assertions throughout their Answering Brief that the Director Defendants *knowingly* committed proxy fraud.[12] (*See, e.g.,* AB at 3 ("Defendants *falsely* represented in the Proxy Statement that Johnson was to become the CEO of post-merger Duke.") (emphasis added); *id.* at 5 ("The numerous and specific allegations of Defendants' knowing violations of positive law (*e.g.*, false representations regarding Johnson leading the combined company) make clear that each defendant faces a

---

[11]   Plaintiffs cite to Defendants' 2012 motion to stay this action, arguing that Defendants previously claimed that this action asserts the "'exact same allegations that underlie the [Securities Class Action].'" (AB at 13 n.3.) Defendants were not referring to the allegations of the current complaint (filed in 2015) and Plaintiffs' quote is misleading—Defendants were referring *generally* to the overarching allegation that Defendants "negligently, recklessly or knowingly caused Duke [Energy] to make material misstatements or omissions." (D.I. 26 at 8.)

[12]   In support of their assertion that the Section 14 claims are negligence-based, Plaintiffs cite inapposite authorities. *See Wilson v. Great Am. Indus., Inc.*, 855 F.2d 987, 995 (2d Cir. 1988) (where no fraud alleged, plaintiffs must plead only negligence); *SEPTA v. Orrstown Fin. Servs., Inc.*, 2015 WL 3833849, at *11 (M.D. Pa. Jun. 22, 2015) (Rule 9(b) not applicable where allegations were separately pleaded *and* expressly premised on negligence).

substantial likelihood of personal liability.  Here, Plaintiffs attack the actions of the pre-Merger Duke Board in disseminating a materially false Proxy Statement[.]"); *id.* at 16 ("defendants *knew* that the Proxy Statement was materially misleading.").)

Plaintiffs cannot have it both ways.  They cannot on the one hand disclaim their fraud allegations to obtain the benefit of a more lenient pleading standard for their Section 14 claim, yet, on the other hand, embrace those same fraud allegations in an effort to demonstrate demand futility.  Because Plaintiffs allege that the Defendants *knew* that the Proxy Statement was materially misleading, their claim sounds in fraud, and therefore must be pled with particularity. *See Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 287 (3d Cir. 1992) (plaintiffs charging defendants with fraud, demonstrated by repeated averments that "defendants 'intentionally,' 'knowingly,' or 'recklessly' misrepresented and omitted . . . certain material information"); *see also In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 197 (3d Cir. 2007) (Section 14(a) claim sounds in fraud and applying Rule 9(b)'s heightened pleading standard).  Therefore, even if this Court were to decide that Plaintiffs have standing to assert these claims, the Court must independently assess whether the allegations sufficiently support a Section 14 claim that sounds in fraud.[13]

### 2.    Plaintiffs Failed To Plead Transaction Causation.

In addition, Plaintiffs have failed to plead the critical element of transaction causation. Plaintiffs incorrectly assert that all that is needed to plead a Section 14(a) claim is to allege that a

---

[13]    Plaintiffs' reliance on *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988) is misplaced.  In that case, the Supreme Court adopted a standard for determining materiality that depends upon "a balancing of both the indicated probability that the event will occur and the anticipated magnitude of the event in light of the totality of the company activity."  *Id.* at 238.  Plaintiffs have not plead any non-conclusory allegations that indicate that there was a high probability that the Independent Directors had decided to replace Johnson in 2011.  *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 725 F. Supp. 712, 747-48 (S.D.N.Y. 1989), is similarly inapposite, as it determined materiality based on whether defendants had made a "'sharp break'" from their previous commitments.  Plaintiffs do not allege any similar "sharp break" here.

"false Proxy Statement [was] used to effect a merger." (AB at 14.)[14] That is not the law. The Third Circuit has explicitly held that "damages are recoverable under Section 14(a) only when the votes for a specific corporate transaction requiring shareholder authorization, such as a corporate merger, are obtained by a false proxy statement, *and that transaction was the direct cause of the pecuniary injury for which recovery is sought*." *General Elec. Co. v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992) (emphasis added); *see also Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 594 F.3d 783, 796-797 (11th Cir. 2010) ("The transaction at issue must be the source of the plaintiff's injury."); *Gannon v. Cont'l Ins. Co.*, 920 F. Supp. 566, 584 (D.N.J. 1996) (causation requirement not met because "as to the merger, plaintiff does not contend that the merger itself was wrongful"); OB at 12-13.[15]

Although Plaintiffs seek to assert damages from the alleged disclosure violations, it is clear that Plaintiffs' claim is in actuality based on the Director Defendants' alleged wrongful conduct relating to Johnson's termination—not the Proxy Statement or the Merger itself. Indeed, the alleged damages stem from, *inter alia*, costs incurred in responding to the NCUC and North Carolina Attorney General investigation, the compensation and benefits paid to the Director Defendants, and other items of damages that Duke Energy clearly would have incurred

---

[14]    Plaintiffs rely on inapposite Supreme Court case law. In *J. I. Case Co. v. Borak*, 377 U.S. 426 (1964), the Court did not discuss transaction or loss causation. In *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970), the Court held that transaction causation is a required element.

[15]    Contrary to Plaintiffs' assertions (AB at 15), *In re VeriSign Derivative Litig.*, 531 F. Supp. 2d 1173 (N.D. Cal. 2007) and *N.Y. Employees' Retirement System v. Jobs*, 593 F.3d 1018 (9th Cir. 2010) are applicable and support dismissal of this claim. In *In re VeriSign*, the court found that the plaintiffs had not adequately pled transaction causation because "they allege no direct injury suffered by VeriSign as a corporation as a direct result of the transaction that was at immediate issue in the proxy (election of directors)." 531 F. Supp. 2d at 1213. In *Jobs*, the Ninth Circuit held that to plead a Section 14 violation, a plaintiff must plead facts connecting the economic loss directly to the proxy. *See* 593 F.3d at 1023, *overruled on other grounds by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012).

regardless of any proxy disclosures it made.  (*See, e.g.*, Compl. ¶ 172.)  On their face, such claims fail to satisfy the requisite element of causation.

> B.      The Section 21D Claim Must Be Dismissed.

> 1.      The Contribution Claim Is Statutorily Barred.

In their Answering Brief, Plaintiffs argue that the Final Judgment in the Securities Class Action does "not preclude Plaintiffs' Section 21D contribution claim because all derivative claims are specifically excluded from the release contained in the final judgment."  (AB at 4, *see also id.* 18-19.)  That the "Settlement Class Members" released only the "Settled Claims" (the "Release Provision")[16] is factually correct but legally irrelevant because the PSLRA mandates a contribution bar *as a matter of law*.  15 U.S.C. § 78u-4(f)(7)(A).  The Securities Class Action Final Judgment, as required by the PSLRA, bars all future claims for contribution[17] against any "settling covered person"—which, Plaintiffs concede, includes the Director Defendants (*id.* at 15 n.4).  The contribution claim therefore was extinguished upon entry of the Final Judgment.[18]

Nor would dismissal of the contribution claim be, as Plaintiffs argue, so inequitable as to estop the Defendants from raising the contribution bar as a defense.[19]  (AB at 19, 21.)  The

---

[16]      (*See* Waesco Aff. Ex. F ¶¶ 8-9.)

[17]      (*See* Waesco Aff. Ex. F ¶ 15; OB at 14.)

[18]      *See In re Cendant Corp. Secs. Litig.* 109 F. Supp. 2d 273, 278 (D.N.J. 2001), *aff'd* 264 F.3d 286 (3d Cir. 2001) ("'[T]he act of settling transforms . . . contribution rights' into a nullity under law—legally *un* protectable interests."); *In re Cendant Corp. Secs. Litig.*, 139 F. Supp. 2d 585, 593 (D.N.J. 2001) ("By [the PSLRA's] language, the bar applies to prohibit *all future claims for contribution* . . . ."); *see also Pall v. KPMG*, 2006 WL 2800064, at *3 (D. Conn. Sept. 26, 2006) (in the case of settlement, "contribution claims against settling parties are barred").

[19]      The PSLRA does not limit the contribution bar to claims brought solely by non-settling defendants.  (AB at 18.)  Notably, the House Report Plaintiffs cite in support is silent as to the rationale for the contribution bar.  (*See* H.R. REP. NO. 104-369 (1995), attached hereto as Exhibit A.)  Regardless, the statute broadly provides that "[t]he [final] order shall bar all future claims for contribution arising out of the action—(i) by any person against the settling covered person; and (ii) by the settling covered person against any person, other than a person whose liability has been extinguished by the settlement of the settling covered person."  15 U.S.C. § 78u-4(f)(7)(A).  Plaintiffs' interpretation would require the Court to ignore the plain language of subsection 78u-4(f)(7)(A)(i).

Plaintiffs never objected to the Settlement Agreement or the Final Judgment.  (*See* OB at 16-17.)

Nor does the contribution bar prevent the Plaintiffs from pursuing their breach of fiduciary duty

claims, for which they seek the same damages.  (*See* Compl. ¶¶ 249, 172(c)-(d).)

## 2.     Plaintiffs Have Not Alleged A Section 21D Claim.

By seeking to re-litigate a previously dismissed Section 10 claim under the guise of a

contribution claim, Plaintiffs are attempting an end-run around the settlement of the Securities

Class Action.  (AB at 16-17.)  To state a contribution claim where there has been a settlement

before a final adjudication, a plaintiff seeking contribution must *admit* joint liability.[20]  *Fromer*

*v. Yogel*, 50 F. Supp. 2d 227, 235-36 (S.D.N.Y. 1999).  Here, Duke Energy has never admitted a

Section 10 violation, and it settled the Securities Class Action without admitting wrongdoing—a

decision the Company made in 2015 and that Plaintiffs never contested.[21]  (OB at 15-16.)

Even if Plaintiffs were free to re-litigate the Section 10 claim previously dismissed with

prejudice in the Securities Class Action, their reliance on Magistrate Judge Cayer's

Recommendation to support the Complaint's allegations is misplaced.  (*See* AB at 3-4, 17.)  The

Magistrate Judge's Recommendation—which was never adopted by an Article III District

Judge—cannot serve as *proof* that Duke Energy committed a Section 10 violation or that the

Director Defendants knowingly participated in such a violation or acted with scienter.

---

[20]    Plaintiffs assert that to bring a Section 21D claim, it is sufficient to solely plead the elements of a Section 10 violation, citing to *Ray v. Citigroup Global Markets, Inc.*, 2004 WL 1794927, at *2-3 (N.D. Ill. Aug. 4, 2004).  (AB at 15-18.)  But *Ray* is distinguishable.  In that action, the defendant alleged third party claims while the underlying Section 10 claim was still being litigated.  2004 WL 1794927, at *1.  Here, in contrast, the underlying Section 10 claim has been dismissed with prejudice.  (Waesco Aff. Ex. F ¶ 7.)  And assuming *arguendo* that Plaintiffs could pursue the Section 21D claim by attempting to replead the Section 10 claim, the Complaint falls far short of the heightened pleading requirements.  (*See* OB at 15-16.)

[21]    As the Third Circuit has acknowledged "one of the benefits of a full settlement is the avoidance of a determination of the merits."  *In re Cendant Corp. Litig.*, 264 F.3d 286, 299 (3d Cir. 2001).  Allowing Plaintiffs to pursue a Section 21D contribution claim would effectively nullify the Company's bargained-for release of the Section 10 claim, which should have "eliminate[ed] the burden and expense of further litigation."  (Waesco. Aff. Ex. K ¶ H.)

Nor can Plaintiffs' vague proxy claim references support their claim for contribution for a Section 10/Rule 10b-5 violation. (*See* AB at 16 (referring to Section 14 allegations to argue that the Complaint alleges a material misrepresentation in the Proxy Statement).) The contribution claim arises from the payments Duke Energy made in connection with the settlement of the Securities Class Action, which did not involve a Section 14 proxy fraud claim. (*See* Compl. ¶¶ 43-44 (citing to the settlement and alleging that "[p]ursuant to section 21D of the Exchange Act, Plaintiffs seek contribution from the Duke Director Defendants to compensate the Company for all amounts that it was forced to pay as a result of their violations of the securities laws"); *see also id.* ¶¶ 127-171 (incorporating Securities Class Action complaint allegations).)

Finally, recklessness cannot be a basis for Plaintiffs' Section 21D contribution claim. (*See* AB at 16-17.) The Complaint seeks contribution from the Director Defendants on the basis that they were "joint violators of the federal securities laws." (*See* Compl. ¶ 18, *see also id.* ¶¶ 44, 241.) But, as detailed in the Opening Brief, contribution for joint and several liability requires a finding that a defendant "*knowingly* commi[ted] a violation of the securities laws." 15 U.S.C. 78u-4(f)(2)(A); OB at 14-15 (emphasis added). As discussed above, the Complaint is bereft of well pled allegations of any such knowing violations.

C.      Plaintiffs Have Not Alleged A Breach Of Fiduciary Duty Claim.[22]

Finally, Plaintiffs argue that the Complaint adequately pleads a breach of the fiduciary duty of loyalty based on the contention that the Director Defendants knowingly caused Duke Energy to issue false and misleading information. (AB at 21-22.) Those conclusory allegations

---

[22]     Plaintiffs misconstrue their own Complaint and Defendants' argument that Plaintiffs have not sufficiently pled a claim for failure of oversight. (*See* AB at 23; OB at 21-22.) The Complaint plainly claims that certain Independent Directors on the Audit Committee "utterly failed in their duty of oversight and failed in their duty to supervise." (Compl. ¶ 248.) In any event, Plaintiffs clearly concede that they have not alleged a failure of oversight claim. (*See* AB at 23.)

rest on the faulty premises that (i) there was a legal obligation to disclose a few of the Independent Directors' inchoate thoughts relating to Johnson's ability to serve as CEO or their preliminary deliberations in May and June 2012 before the Board's vote, ***and*** (ii) the Director Defendants knew the Company had this obligation. *See In re Capital One*, 952 F. Supp. at 784. But none of the testimony incorporated by reference in the Complaint, or the media coverage following the Board vote, shows that the Director Defendants possessed knowledge of illegality. (OB at 18-21.) And contrary to Plaintiffs' assertions (AB at 22), the cases cited by Defendants in support of dismissal are directly on point. *See*, *e.g.*, *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008) (plaintiffs must plead with particularity "scienter, *i.e.*, that they had 'actual or constructive knowledge' that their conduct was legally improper").

## CONCLUSION

For the foregoing reasons and the reasons set forth in Defendants' Opening Brief, Defendants respectfully request that this Court grant Defendants' Motion to Dismiss the Verified Consolidated Amended Shareholders' Derivative Complaint.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Susan W. Waesco*
Kenneth J. Nachbar (#2067)
Susan W. Waesco (#4476)
Alexandra M. Cumings (#6146)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
knachbar@mnat.com
swaesco@mnat.com
acumings@mnat.com
*Attorneys for Defendants James E. Rogers,*
*Michael G. Browning, G. Alex Bernhardt, Sr., Ann*
*Maynard Gray, James T. Rhodes, James H.*
*Hance, Jr., William Barnet III, Philip R. Sharp,*
*Daniel R. DiMicco, John H. Forsgren and E.*
*James Reinsch, and Nominal Defendant Duke*
*Energy Corporation*

OF COUNSEL:

Jack B. Jacobs (#000008)
SIDLEY AUSTIN LLP
1201 North Market Street
Suite 1402
Wilmington, DE 19801
(302) 654-1805

Steven M. Bierman
Andrew W. Stern
Jackie A. Lu
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019

April 15, 2016

16